W. J. USERY, Jr., Secretary of Labor, Petitioner, Appellant,

v.

WHITIN MACHINE WORKS, INC., Respondent, Appellee.

No. 76–1373.

United States Court of Appeals, First Circuit.

Argued Nov. 5, 1976.

Decided May 11, 1977.

Neil H. Koslowe, Atty., Dept. of Justice, Civ. Div., Appellate Section, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Washington, D. C., James N. Gabriel, U. S. Atty., Boston, Mass., William J. Kilberg, Sol. of Labor, Alvin Bramow, Acting Associate Sol. Gen., Legal Services, John R. Garson, Counsel for International Affairs, Anna Holmberg, Atty., Dept. of Labor, and Ronald R. Glancz, Dept. of Justice, Civ. Div., Appellate Section, Washington, D. C., were on brief, for petitioner, appellant.

Gunter von Conrad, Washington, D. C., with whom James H. Lundquist, H. Henning Vent and Barnes, Richardson & Colburn, Washington, D. C., were on brief, for respondent, appellee.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, and GIGNOUX,* District Judge.

* Of the District of Maine, sitting by designation.

COFFIN, Chief Judge.

This appeal presents the somewhat bizarre case of an employer attempting to terminate a procedure which could result in substantial benefits to many of its present and former employees by standing piously on a Congressional directive for expedition. This suit began when the Secretary of Labor filed a complaint under § 249 of the Trade Act of 1974 to enforce a subpoena that ordered Whitin Machine Works (Whitin) to furnish certain materials the Secretary needed to determine whether Whitin's employees were eligible for worker adjustment assistance under § 222 of that Act, 19 U.S.C. § 2272. Whitin interposed the defense that the subpoena exceeded the Secretary's jurisdiction because it was untimely and overbroad. The district court accepted these contentions and dismissed the complaint. We reverse.

The Trade Act of 1974 is a comprehensive program to foster economic growth and full employment in the United States and to strengthen economic relations with foreign countries by reducing restrictions on foreign trade and imports. Because the Congress recognized that increased importation of foreign goods could cause serious economic dislocations in certain segments of American society and because it wished to ameliorate the consequences of such dislocations, it established a series of remedial programs to assist affected groups in adjusting to the effects of increased imports. *See id.* §§ 2271–2322 (adjustment assistance for workers), §§ 2341–54 (adjustment assistance for firms), §§ 2371–74 (adjustment assistance for communities).

The worker adjustment assistance program, which is the central concern of this case, authorizes the Secretary to grant a number of benefits to workers who, by reason of increased imports, have been "partially or totally separated" from their employment. Such workers may receive compensation calculated largely on the basis of their previous weekly wages, *id.* §§ 2291–94, employment services, *id.* § 2295, training, *id.* § 2296, job search allowance, *id.* § 2297, and relocation allowances, *id.*

§ 2298. No worker may receive such benefits unless the Secretary has previously issued a certification that the workers in the affected firm are eligible to apply. To be certified, the workers file a petition with the Secretary, who will issue the certification if he determines that a significant number of the workers in the firm are being threatened with total or partial separation, that the sales or production of the firm has decreased absolutely, and that increased importation contributed to the decreased sales and jobs. The date of the workers' petition determines the period for which workers may receive benefits. *Id.* § 2273(b)(1).

On November 7, 1975, a petition for worker adjustment assistance was filed on behalf of Whitin's employees. The petition alleged that Whitin, a manufacturer of textile and printing machinery, had laid off some 800 employees during the previous year, and suggested that increased imports might be the cause of such layoffs. The Secretary, as required by § 221 of the Act, 19 U.S.C. § 2271, published a notice that he had received the petition in the Federal Register and initiated an investigation to determine whether the group eligibility requirements had been satisfied. In the course of the investigation, the Secretary determined that he required certain sales, production, and employment data from Whitin, and he issued a formal request to Whitin. The Secretary's formal request provided categorically that no truly confidential business records would be disclosed to any third party. This statement was consistent with the Secretary's regulations, which provide that information which is exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b), will not be made available to the public. *See* 29 C.F.R. §§ 90.32, 90.33. In this connection, we note that the Secretary has a procedure whereby a company like Whitin may obtain an administrative determination of the exempt character of any information which has been requested before it unconditionally discloses the materials to the Secretary. *See* 29 C.F.R. § 90.33. On December 19, Whitin's counsel wrote the Secretary that

Whitin, a net exporter, did not believe that increased imports had affected its production or sales. Subsequent discussions occurred, and Whitin at one point offered to let the officials see, but not transmit, the information that had been requested. This was not acceptable to the Secretary. On January 9, 1976, Whitin, in a letter, provided some information, but it reiterated its conclusion that imports had not affected its business and that inquiry into specific company records, which allegedly contained sensitive information, was not warranted. At no time did Whitin avail itself of the procedure in which it could have received a determination by the Secretary of the exempt status of the information which had been requested. Four days later the Secretary issued a subpoena,[1] and Whitin refused to comply. An enforcement action was brought in federal district court, and, after a hearing and submission of memoranda, the district court dismissed the complaint.

The district court believed the dismissal was mandated by § 2273(a) which provides that the Secretary shall determine eligibility for adjustment assistance "[a]s soon as possible after the date on which a petition is filed under section 2271 of this title, but in any event not later than 60 days after that date". It held that the directive to make a determination within 60 days is a limitation on the Secretary's jurisdiction and that, by failing to make an eligibility

determination before January 13, 1976, the Secretary lost his power to take any steps in furtherance of the investigation. As a second ground for dismissing the complaint, the district court held that the Secretary had exceeded his subpoena power by ordering that certain data be complied and analyzed.

The first question before us is whether the Act was properly construed as ousting the Secretary of jurisdiction to make an eligibility determination after 60 days had passed following the filing of the petition. We observe that the statute does not specifically address this question. Although Congress clearly desired the expeditious treatment of such petitions, there is nothing in the statute which in any way suggests that the time limitation was designed to be jurisdictional. The Act neither purports to restrain the Secretary from acting after 60 days have passed nor specifies that any adverse consequences follow from the Secretary's failure to comply. In the absence of any such clear indications of Congressional intent that the limitations are to be strictly enforced, courts have uniformly held that the time requirements in statutes such as the one in the case at bar are not jurisdictional. *See Fort Worth Corp. v. Federal Savings & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir. 1972); *Maryland Casualty Co. v. Cardillo*, 69 App.D.C. 199, 99 F.2d 432 (1938); *cf. United States v. Morris*, 252 F.2d 643, 648–49 (5th Cir. 1960).[2]

---

1. The subpoena requested the production of "books, papers, and documents" as described in an attached page. The attached page requested sales, production, and inventory data for three years, separately identified by product; employment data, including average weekly and monthly employment; data as to quantity and value of Whitin's imports, identified by product lines; and the percentage of production and sales accounted for by Whitin's exports.

2. We think the parties would have better served the district court if they had discussed the wide variety of contexts in which time limitations appear in the Act and the many different purposes such limitations serve. While there are time periods, the purposes of which suggest that they may well operate as rigid limits to power, *see, e. g.*, § 2111(a)(1) (period during which President may enter trade

agreements); § 2112(e) (advance notification to Congress of intention to enter trade agreement); § 2132(c) (temporary 150 day reductions or increases in duties); §§ 2191, 2192 (time periods governing concurrent resolutions); § 2253(i)(3) (objection to termination of import relief not earlier than nine months nor later than six months before scheduled termination); § 2271(b) (request for hearing on workers' petition must be filed within ten days), many provisions in the Act specify time limitations where, notwithstanding the seemingly mandatory language, it is quite arguable that delay would mean an absence of power to act. *See, e. g.*, § 2135(e) (after termination of import restrictions President "shall transmit" to Congress within sixty days recommendations as to appropriate rates of duty); § 2151(b) (within six months or, in some cases, ninety days of receipt of a list of articles submitted by President, International Trade Com-

The contrary result of the district court is not only inconsistent with established principles; it produces a result which we find impossible to square with the remedial objectives of the Act. The consequence of the district court's approach would be that worker adjustment assistance would be absolutely denied certain workers who had taken the statutorily required steps to establish their eligibility. Even if we assume that the workers will be free to file a second petition to establish their eligibility under the district court's approach, the result would be that benefits would be denied those additional workers whose last total or partial separation occurred after November 7, 1974 but before the date one year prior to the filing of the second petition. *See* § 2273(b)(1). We cannot believe that Congress could have intended to deny any worker his federal benefits solely because of administrative footdragging.

The overriding objective of the adjustment assistance programs is to ameliorate the consequences of the economic readjustments occasioned by increased imports. That Congress could have intended that the attainment of this paramount goal was to be subordinated to the protection of whatever interests might be served by prompt eligibility determinations strikes us as implausible. Moreover, we doubt that the time limitations were required to protect any interests other than those of the Act's beneficiaries.[3] The only conceivable purpose of the 60 day decision requirement was to further the Act's remedial goals by ensuring that there would be no long delays in the distribution of benefits; Congress apparently was interested not only in granting benefits but also in ensuring that, to the maximum extent feasible, the benefits were received during the periods in which they were most needed. It would be ironic indeed to convert this seemingly remedial provision into one which would have the effect of denying any benefits to some workers.

■ We note that we have not used the word "directory" to refer to the time requirement of § 2273(a) and that we express no opinion as to whether workers or their representative could enforce compliance with the time limitation by way of an ac-

---

mission "shall" give advice as to economic effect of modification of duties to President); § 2251 (on a request by the President, Congress, and others for advice as to the necessity for "import relief", the International Trade Commission "shall . . . not later than six months" render its report); § 2252(b) (within sixty days after such report the President "shall" determine the method and amount of import relief); § 2252(d) (after receiving an affirmative finding from the Commission, President may, within fifteen days, request additional information and Commission "shall . . . in no event more than 30 days" furnish additional information); § 2274(b) (study of Secretary of Labor on import relief "shall be made to the President not later than 15 days" after the filing of the Commission's report); § 2436(a)(4) (on request of President and others, Commission "shall . . . not later than 3 months" file report of market disruption from imports from Communist country).

**3.** Within not surprisingly argues that a purpose of the 60 day requirement was to protect the interests of third parties like itself who may be called upon to furnish information. There is no merit to this suggestion. The timing of a subpoena vis-a-vis the date of the filing of the petition seems to bear little, if any, relationship to the burden that compliance therewith impos-

es on companies like Whitin. An employer in Whitin's position will invariably be requested to furnish information relating to business activities both prior to and during the period of increased competition from foreign imports; the timing of the subpoena will affect neither the scope of the duty to produce information nor the difficulty of compliance. In light of this, it is difficult to see how an interest of the employer is furthered by strict enforcement of the 60 day requirement. Moreover, if, as seems likely, the district court's approach would permit the workers to file a second petition to establish their eligibility, no employer interest could be furthered by making the limitation jurisdictional. A second timely subpoena could issue, and it could be enforced against a recalcitrant employer.

A holding that the 60 day requirement is jurisdictional could adversely affect employers like Whitin who are concerned about the disclosure of confidential information and would like to negotiate with the Secretary over what information must be disclosed. If the 60 day requirement were jurisdictional, the Secretary would have to issue subpoenas at the outset of each investigation, and no negotiations could ever occur.

tion in the nature of mandamus. *See* 28 U.S.C. § 1361. We hold only that the Secretary is not ousted of jurisdiction by reason of his failure to make an eligibility determination within 60 days of the filing of the petition.

■ The district court's alternative ground for dismissing the action was that the subpoena was overbroad because it required Whitin not only to produce information but also to analyze and compile certain data. While the district court was not unwarranted in concluding that the subpoena was overbroad, *see* n. 1 *supra*, it was error to dismiss the action on this ground. The Secretary's subpoena clearly indicated that certain of Whitin's books, papers, and documents were being requested, and while it would have been appropriate for the district court to grant partial enforcement of the subpoena by inserting language in its order that made it clear that Whitin was obligated to produce only the requested books, papers, and documents, *see FTC v. Texaco, Inc.*, 170 U.S.App.D.C. 323, 517 F.2d 137, 149–50 (1975); *Adams v. FTC*, 296 F.2d 861, 870–71 (8th Cir. 1961); *cf. SEC v. Brigadoon Scotch Dist. Co.*, 480 F.2d 1047, 1056 (2d Cir. 1973), no purpose whatsoever was served by dismissing the complaint. The sole practical effect of such action would have been that the Secretary would have had to issue a second subpoena, which would have been identical to the first except that it would have clearly stated that only books, papers, and documents were being requested.

■ Finally, Whitin argues that the subpoena is unenforceable for the additional reason that the information it was ordered to produce was confidential but that the Secretary could give no assurance that the information might not be disclosed to third parties pursuant to the Freedom of Information Act, 5 U.S.C. § 552. A complete answer to this argument is that the possible confidentiality of such information is not a defense to an action to enforce a subpoena.

■ Whitin's pleadings, although not its appellate brief, suggest that, following remand, the district court should be authorized to conduct further proceedings to consider entering a protective order that would prohibit the Secretary from disclosing any confidential information. While a protective order might be proper in another context—e. g., if the agency could be shown either to be less than diligent in safeguarding confidential materials or to lack adequate procedures and regulations for that purpose—further proceedings to consider the entry of such an order would be inappropriate here. The only materials of which Whitin has an interest in avoiding disclosure are those that are "trade secrets and commercial or financial information" within the meaning of the Freedom of Information Act, 5 U.S.C. § 552(b). Since the Secretary's regulations provide that no such information will be disclosed, *see* 29 C.F.R. § 90.32(b), there appears to be no danger that any information will be disclosed without the Secretary's having made an administrative determination that such information is not "confidential"—and Whitin does not contend otherwise. What Whitin appears to want is an opportunity to receive a prior judicial determination of the "exempt" character of the materials which have been subpoenaed. We observe, first, that such a determination might not ensure the nondisclosure of any piece of information: the judicial finding would not necessarily be binding on a third party who thereafter brought suit under the Freedom of Information Act, 5 U.S.C. § 552(a)(4).[4]

---

4. This Circuit has never had the occasion to decide whether a company in Whitin's position has the right to prevent the disclosure to third parties of information which is exempt from disclosure under the Freedom of Information Act. *Compare Charles River Park "A", Inc. v. HUD*, 171 U.S.App.D.C. 286, 519 F.2d 935, 941 (1975) *with Westinghouse Electric Corp. v. Schlesinger*, 542 F.2d 1190, 1204 (4th Cir.

1976). Whether or not there is to be a "reverse FOIA" suit, for the reasons stated above, we do not believe any Freedom of Information Act questions should be injected into an action to enforce this subpoena. We observe that, if the Secretary is ever prepared to disclose any information to a third party, Whitin could attempt to bring such an action to enjoin the Secretary from doing so. Whitin might also be

More significantly, to permit litigation of the exempt character of each piece of information would introduce significant delays into the Secretary's eligibility determinations. Since Congress has adopted a policy of expedition in these matters and since permitting such determinations would provide no clear benefit to Whitin, we think such further judicial proceedings would be contrary to the objectives of the Trade Act. Finally, we also observe that Whitin is in a poor position to request a judicial determination since it, for no good reason, has refused to take advantage of the procedure whereby it could have received an administrative determination of the exempt character of its materials before finally disclosing them to the Secretary. *See* 29 C.F.R. § 90.-33. Had it availed itself of this opportunity, Whitin might have learned that the Secretary believed that some, or even all, of the requested information was exempt from disclosure.

*The judgment of the district court is reversed and the case is remanded so that the district court may enter an appropriate order compelling Whitin to furnish the requested books, materials, and documents.*

able to institute an action under the Administrative Procedure Act, 5 U.S.C. §§ 702–06 and attempt to enjoin the disclosure on the ground that it violated the Secretary's own regulations.