**FEDERAL TRADE COMMISSION,**
Petitioner,

v.

**STANLEY H. KAPLAN EDUCATIONAL CENTER LTD., and Stanley H. Kaplan, Respondents.**

**No. EBD 77–25.**

United States District Court,
D. Massachusetts.

June 16, 1977.

Miriam A. Bender, F.T.C., Washington, D. C., Arthur E. Levine, Boston Regional Office, F.T.C., Boston, Mass., for F.T.C.

Thaddeus R. Beal, Jr., Boston, Mass., William P. Tedards, Jr., Robert E. Liedquist, Nicholson & Carter, Washington, D. C., for respondents.

## MEMORANDUM

TAURO, District Judge.

The Federal Trade Commission (FTC or Commission) petitions this court for an order, pursuant to 15 U.S.C. § 49, requiring the respondents, a New York corporation and its president, to comply with its subpoena *duces tecum* issued in connection with an investigation of the respondents. Respondents have agreed to produce all materials sought by the subpoena, except those listed in Specification Two. As to those materials, respondent has filed a motion to quash or, in the alternative, for a protective order. For the reasons set forth below, the court grants the petition of the FTC.

I

Stanley H. Kaplan Educational Center Ltd. (SHK) offers higher education admission test preparation courses for standardized tests. Stanley H. Kaplan (Kaplan) is its president and founder. The Boston Regional Office of the Federal Trade Commission is investigating to determine whether these respondents have engaged in false,

misleading and deceptive representations, in connection with the sale of educational courses or services so as to violate Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45. This investigation is part of an FTC industry-wide inquiry aimed at determining whether or not various examination and test preparers, review courses and coaching schools are engaging in unfair or deceptive acts or practices in connection with the advertising, sale and distribution of their services and products. The use of compulsory process was authorized by the FTC in connection with this industry-wide investigation on October 13, 1976.

On July 29, 1976, the Regional Director of the FTC's Boston Regional Office issued a subpoena to respondents ordering them to produce three sets of documents. Respondent has produced all of the requested documents except those listed in Specification Two of the subpoena:

> The originals or copies thereof, if the originals cannot be produced, of all such documents in the form of contracts, agreements or any other form of understanding, together with "face sheets" and all other supporting documents prepared and/or executed by Stanley H. Kaplan Educational Center Ltd. and enrollees, or on behalf of enrollees, in SAT and LSAT coaching courses conducted by Stanley H. Kaplan Educational Center Ltd. in the metropolitan areas of Boston, Mass.; New York, N.Y.; Chicago, Ill. and Los Angeles, Ca. during the inclusive period of time from January 1, 1973 through the return date of this subpoena.

The production of those materials is, therefore, the only issue before the court.

On August 19, 1976, respondents filed a motion to quash the subpoena, arguing that: 1) the Boston Regional Office lacks FTC authority to utilize compulsory process in this investigation; 2) use of the underlying resolution would deprive SHK of the procedural safeguards accorded by the FTC to all persons and corporations subject to FTC investigations; and 3) the Boston Regional Office had acted in an arbitrary and capricious manner. With regard to the last claim, the respondents alleged specifically that the subpoena represented an "unwarranted attempt to breach the confidential relationship between educator and student" that would cause irreparable damage to SHK's business reputation, and that there were alternatives available to the use of compulsory process.

Subsequently, while the motion to quash was still under consideration, respondents offered to furnish some of the requested information on certain conditions. SHK would supply the names and addresses of all of its students who completed SAT and LSAT test preparation courses in the listed cities during 1974, 1975 and 1976. As a condition to that offer, the information would only be used in connection with a controlled study being conducted by the Educational Testing Service (ETS) to ascertain the performance of SHK students on the college boards and law boards. Further, counsel for SHK was to be allowed to examine the results of the study upon its completion. Finally, the Boston Regional Office was not to contact any SHK enrollees until SHK counsel had examined the ETS study and had been afforded twenty (20) days notice.

After consideration of respondents' arguments, the FTC denied respondents' motion to quash and rejected their offer. The FTC stated, in a letter to the respondents dated November 1, 1976, that the subpoena was validly issued and that the information requested was relevant to the inquiry. The FTC's position was that it could not commit itself to restrictions upon the use of the information sought, and that the Boston Regional Office had not acted in an arbitrary or capricious manner. While reaffirming its authority to compel the production of confidential information, the FTC made assurances to SHK that it would afford special protection to the material in Specification Two. Amongst the assurances offered were: 1. that it would not disclose those documents to any person without first giving SHK ten days notice of its intention to do so; 2. that although the FTC would exempt from the advance notice

procedure documents provided to the ETS or to another outside consultant, it would only give the documents to a consultant who had agreed not to release them; and 3. that the FTC would consider any further requests for confidentiality with respect to particular documents.

On November 14, 1976, the return date for the subpoena, the respondents failed to appear or produce the requested documents. On the following day, the FTC was notified by respondents' counsel of his clients' refusal to comply with the subpoena.

The FTC now seeks an order compelling respondent to produce the disputed documents. Respondents have moved this court for an order quashing Specification Two of the subpoena, or in the alternative, for a protective order requiring the Commission to observe the following restraints in handling information and material submitted in response to Specification Two:

1. retain all information and material in confidence;
2. divulge no names to the ETS except the names of students who have repeated either the SAT or the LSAT, and submitting them to ETS in a way that does not indicate they are respondents' students;
3. divulge names to ETS only on the condition that ETS (a) hold the names in confidence; (b) use the names only to perform studies requested by the FTC; (c) restrict access to the names to ETS employees directly involved in the studies; and (d) return the names to the FTC upon completion of the studies; and
4. refrain from attempts to contact former students of respondents until: (a) ETS has completed the studies; (b) the FTC has concluded on the basis of the studies that the respondents have misrepresented one or more of their courses; and (c) respondents have been given ten days notice.

The court heard arguments on March 9, 1977 on the FTC demand to show cause why the respondents should not produce the documents in question.

## II

■ Administrative remedies regarding disclosure of information to an administrative body must be exhausted before the party may seek judicial review. *Federal Communication Commission v. Schreiber*, 381 U.S. 279, 296–97, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965); *Usery v. Whitin Machine Works, Inc.*, 554 F.2d 498, at 504 (1st Cir. 1977). Throughout the proceedings before the Commission, SHK sought to put only three conditions on the release of the information listed in Specification Two, as described above. At no time did SHK ask that the information to be supplied to ETS be limited to the names of students who were repeaters, or that the names be submitted in a way that does not indicate that they are respondents' students. Nor did SHK ever ask the Commission to restrict the use of the information by ETS, even though the Commission offered to require that ETS keep the information confidential. Consequently, respondent has not exhausted his administrative remedies as to the issues presented in paragraphs 2 and 3 of his proposed protective order. Therefore, this court need focus only on paragraphs 1 and 4 of respondents' proposed order.

## III

■ The scope of judicial review in a proceeding of this sort is ordinarily limited to the validity of the subpoenas and as to whether the Commission acted arbitrarily. *United States v. Morton Salt Co.*, 338 U.S. 632, 652, 70 S.Ct. 357, 94 L.Ed. 401 (1950); *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 209, 66 S.Ct. 494, 90 L.Ed. 614 (1946). The validity of a subpoena depends on whether the investigation is within the Commission's authority, the demand is not too indefinite and whether the information sought is reasonably relevant. *United States v. Morton Salt Co., supra.* The respondents do not now contest the validity of the subpoenas. Rather, they contest the uses to which the requested information will be put. Specifically, they claim that

the Commission's rejection of their request for a protective order was arbitrary and capricious.

The cases cited by respondents in support of their motion are inapposite. For instance, in *Genuine Parts Co. v. F.T.C.*, 445 F.2d 1382 (5th Cir. 1971) and *Adams v. F.T.C.*, 296 F.2d 861 (8th Cir. 1961) *cert. den.*, 369 U.S. 864, 82 S.Ct. 1029, 8 L.Ed.2d 83 (1962), the circuit court affirmed the district court's modification of the administrative subpoena. In both cases, however, the district court had modified the administrative subpoena so as to limit the scope of the information sought, not the use to which it could be put. Thus, both of these decisions concern the validity of the subpoenas, which is a legitimate area of judicial review.

Respondents also rely on *F.T.C. v. Texaco, Inc.*, 170 U.S.App.D.C. 323, 517 F.2d 137 (1975), in which the circuit court affirmed the district court's imposition of protective conditions on the Commission's subpoena. That decision, however, was vacated and the matter reargued *en banc. F.T.C. v. Texaco, Inc.*, 555 F.2d 862 (D.C. Cir. 1977). The opinion after rehearing substantially modified the earlier opinion. In its second opinion, the court found the protective order imposed by the district court to be improper because it would have placed the court "in a position of supervision and control over the Commission in the exercise of its statutory duties" and would have "effectively blocked legitimate avenues of the FTC's inquiry." 555 F.2d at 885. The order sought here by respondents would have the effect proscribed by the Court of Appeals for the District of Columbia.[1] That is, such an order would prevent the FTC from pursuing its investigation in the manner it desires—by beginning to interview SHK clients—and it would require the FTC to return to court before moving on to another stage of its investigation. This court, following the reasoning of the court in *F.T.C. v. Texaco, Inc.*, *supra*, holds

that such an order would be an improper exercise of its power. *Cf. Usery v. Whitin Machine Works, Inc.*, *supra*, 554 F.2d at 504 (permitting litigation of exempt character of subpoenaed material would impermissibly delay the Secretary's determinations).

In a case closely analogous to the case at bar, the Supreme Court specifically discussed the circumstances under which the refusal of an administrative agency to grant a protective order could be overturned by a district court. *FCC v. Schreiber*, 381 U.S. 279, 85 S.Ct. 1459, 14 L.Ed.2d 383 (1965). In that case, *Schreiber*, vice-president of the Music Corporation of America (MCA), was served with a subpoena to produce certain documents in connection with an FCC investigation of the television industry. He refused to produce the documents unless confidentiality was guaranteed. The Presiding Officer denied the request. On appeal within the agency, the Commission affirmed his order, noting that the Presiding Officer had taken care to avoid the dissemination of corporate financial information and contracts. When Schreiber still refused to produce the documents, the FCC applied to the district court for an order to compel production. The district court ordered that he produce the documents on the condition that the FCC guarantee their confidentiality. The Court of Appeals affirmed, but the Supreme Court reversed, holding that the Commission's rule, favoring public disclosure, was within its statutory authority, and that it had not abused its discretion in applying the rule.

The Supreme Court based its holding primarily on the principle that courts should not substitute their judgment for that of regulatory agencies more familiar with the industries they are charged with regulating. 381 U.S. at 290–91, 85 S.Ct. 1459. Thus the proper standard of review of agency action is whether the agency exercised its power in a reasonable manner, not whether reasonable minds might differ

---

1. The court notes that the views of the Court of Appeals for the District of Columbia carry great weight in administrative law matters.

*City of Westfield v. F.P.C.*, 551 F.2d 468 (1st Cir. 1977).

on the wisdom of the action. *Id.* at 292, 85 S.Ct. 1459. In performing the review, a court must act on the basis of a presumption of administrative regularity. *Id.* at 292, 85 S.Ct. 1459. Thus, in *Schreiber*, the district court's implicit assumption, that the Presiding Officer would require disclosure even if the balance of public and private interests mandated secrecy, was improper as it was contrary to the presumption of administrative regularity. *Id.* at 296, 85 S.Ct. 1459. Finally, the Court in *Schreiber* noted that the responses of the administrative agency to respondents' chief arguments were not arbitrary; that the disclosure of the information would not cause respondents competitive harm, in light of the disclosure of the same information by their competitors; and that private agreements between respondent and their clients in regard to confidentiality could not control the action of the Commission. *Id.* at 298, 85 S.Ct. 1459.

In the instant case, the respondents have not alleged anything which would overcome the presumption of administrative regularity. Moreover, the presumption is strengthened by the FTC's demonstration of good faith in promising to give SHK notice before disclosing the information to anyone other than ETS. Finally, in this case, as in *Schreiber*, the FTC rejected respondents' arguments that it should not be required to produce the information because of its agreements with its clients not to do so, and because of possible competitive harm. The court finds no abuse of discretion in this decision by the agency. *Usery v. Whitin Machine Works, Inc.*, *supra*, 554 F.2d at 503.

A final argument advanced by the respondents is that this case arises under "special circumstances that warrant careful examination." The "special circumstances" reduce to the alleged "vested interest" which respondents argue ETS has in the outcome of this proceeding. Even if ETS had such a vested interest—a question which this court does not reach—that alone would not demonstrate that the decision by the FTC with respect to the subpoena is arbitrary. The failure of the respondents to ask the FTC to limit the use of the documents by ETS further undermines their argument. See, for instance, *United States v. Powell*, 379 U.S. 48, 85 S.Ct. 248, 13 L.Ed.2d 112 (1964), in which the Court explained that an agency would be found to have abused its discretion in issuing a subpoena if the summons were issued to harass the taxpayer or to pressure him with respect to an unrelated matter, or for any other purpose bringing the agency's good faith into question.

IV

Accordingly, since the court finds that the validity of the subpoena is not in question, and that the respondents have not shown that the Commission abused its discretion in denying the respondents' request for a protective order, the court grants the Commission's petition for an order requiring the respondents to appear, and denies the respondents' motion to quash or in the alternative for a protective order. An order will issue.