USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 _________________________

Misc. No. 97-8068

 HECTOR SANTIAGO RODRIGUEZ,

 Putative Petitioner,

 v.

 SUPERINTENDENT, BAY STATE CORRECTIONAL CENTER,

 Putative Respondent.

 _________________________

 ON APPLICATION FOR LEAVE TO FILE

 A SECOND OR SUCCESSIVE HABEAS PETITION

 __________________________

 Before

 Torruella, Chief Judge,

 Selya and Stahl, Circuit Judges.

 _________________________

 James F. McNiff, II for the putative petitioner.
 Gregory I. Massing, Assistant Attorney General, with whom
Scott Harshbarger, Attorney General, was on brief, for the putative
respondent.

 _________________________

 March 23, 1998

 _________________________ SELYA, Circuit Judge. This proceeding involves questions
of novel impression. It finds its genesis in an application by
Hector Santiago Rodriguez for permission to file a third habeas
corpus petition seeking relief from his conviction, nearly three
decades ago, for first-degree murder. Because the putative
petitioner (who, for simplicity's sake, we shall refer to as
"petitioner," without any qualifying adjective) fails to satisfy the
statutory prerequisites for filing a successive petition, we deny
his application.
I. BACKGROUND
 On November 30, 1971, a Massachusetts jury convicted
Rodriguez of the first-degree murder of William Alonzo Johnson. 
The trial judge sentenced him to life imprisonment and the
Massachusetts Supreme Judicial Court (SJC) affirmed his conviction. 
See Commonwealth v. Rodriguez, 300 N.E.2d 192 (Mass. 1973).
 In addition to filing various post-conviction motions in
the state courts, Rodriguez also filed two unsuccessful habeas
petitions in the federal courts. The first, circa 1977, challenged
the constitutionality of the trial judge's comments to the jury
during deliberations. The second, filed in 1984, asserted that the
trial judge's end-of-case jury instructions unconstitutionally
relieved the prosecution of its burden to prove beyond a reasonable
doubt that Rodriguez had not acted in self-defense.
 In 1995, Rodriguez filed another motion for new trial in
the Massachusetts courts. This motion took renewed aim at the
constitutionality of the jury instructions, this time targeting the
trial judge's use of "moral certainty" language in his reasonable
doubt instructions. Relying on Cage v. Louisiana, 498 U.S. 39
(1990) (per curiam), Rodriguez argued that the targeted language
abridged his right to due process by permitting the jury to convict
him even if the prosecution had not proved its case beyond a
reasonable doubt. The state superior court denied Rodriguez's
motion and, on November 18, 1996, the SJC refused further appellate
review.
 During the pendency of these state court proceedings,
Congress enacted the Antiterrorism and Effective Death Penalty Act
of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) (AEDPA). While
AEDPA preserves a state prisoner's right to seek federal habeas
review of an unconstitutionally obtained conviction, it prohibits
a district court from entertaining second or successive habeas
petitions without pre-clearance by the appropriate court of
appeals. See 28 U.S.C. 2244(b)(3) (Supp. 1996). Thus, on
October 3, 1997, Rodriguez approached this court and requested
authorization to pursue a third habeas petition in the federal
district court. The featured claim echoes that pressed before the
Massachusetts courts: Rodriguez contends that Cage's condemnation
of some moral certainty instructions as violative of due process,
498 U.S. at 41, is "a new rule of constitutional law, made
retroactive to cases on collateral review by the Supreme Court,
that was previously unavailable." 28 U.S.C. 2244(b)(2)(A). 
Realizing that resolution of Rodriguez's application requires this
court to interpret certain of AEDPA's provisions for the first
time, we requested additional briefing and entertained oral
argument.
II. ANALYSIS
 Because Rodriguez filed his application for leave to
prosecute a third habeas petition long after AEDPA's effective
date, AEDPA governs here. See Lindh v. Murphy, 117 S. Ct. 2059,
2063 (1997). The statute contains a gatekeeping mechanism that 
screens second or successive habeas petitions before they reach the
district court. See Felker v. Turpin, 116 S. Ct. 2333, 2340
(1996). This mechanism closes the doors of the district court to
a prisoner who wishes to file a second or successive petition
unless and until he obtains advance clearance from the appropriate
court of appeals. See 28 U.S.C. 2244(b)(3). AEDPA instructs
that a potential repeat petitioner must make a "prima facie
showing," 28 U.S.C. 2244(b)(3)(C), to this court either that his
"claim relies on a new rule of constitutional law, made retroactive
to cases on collateral review by the Supreme Court, that was
previously unavailable," id. 2244(b)(2)(A), or that his claim
rests on material, newly discovered facts, see id. 2244(b)(2)(B). 
Absent such a showing, Rodriguez cannot prosecute his third habeas
petition.

 A. The 30-Day Limit.
 Before turning to the merits, we iron out a wrinkle
created by the AEDPA amendments to habeas corpus procedure. In
pertinent part, those amendments direct that the "court of appeals
shall grant or deny the authorization to file a second or
successive application not later than 30 days after the filing of
the motion." 28 U.S.C. 2244(b)(3)(D). Rodriguez filed his
application on October 3, 1997, and thus section 2244(b)(3)(D)
directs us to rule no later than November 2, 1997. Because we
obviously have missed that deadline, we must evaluate the effect,
if any, of this failure on Rodriguez's aspirations.
 The Sixth Circuit recently pondered this issue and held
that section 2244(b)(3)(D) "is hortatory or advisory rather than
mandatory." In re Siggers, 132 F.3d 333, 336 (6th Cir. 1997). We
agree. Before operating as a mandate, a statutory time limitation
addressed to a public official generally must contain both an
express command that the official act within a given temporal
period and a consequence attached to noncompliance. See id.; seealso St. Regis Mohawk Tribe v. Brock, 769 F.2d 37, 41 (2d Cir.
1985); Usery v. Whitin Mach. Works, Inc., 554 F.2d 498, 501 (1st
Cir. 1977). Although section 2244(b)(3)(D) invokes the vocabulary
of obligation it states that a court of appeals "shall" grant or
deny a request to file a second or successive petition within 30
days it specifies no consequence for the court's failure to honor
this obligation. Moreover, there is nothing in the nature of the
power to which the temporal limitation appertains, or in the manner
of its conferment, that would justify an inference that Congress
intended the specified period of time to operate as a limitation on
judicial authority. Hence, we construe the statute as precatory,
not mandatory. While section 2244(b)(3)(D) directs the courts of
appeals to work within a specified time frame a charge consonant
with AEDPA's broader attempts to streamline the habeas process 
it operates as a guideline, not as an imperative.
 Let us be perfectly clear. When presented with an
application for leave to file a second or successive petition, we 
will, of course, make a diligent, good-faith effort to comply with
the 30-day time limit. We anticipate little difficulty doing so in
the ordinary mine-run of cases. Yet, certain applications will
present issues that are sufficiently complex or novel to demand
more time. In some instances, additional documents must be
gathered; in others, supplemental briefing and/or oral argument
will be desirable. If circumstances counsel against issuing a
ruling within 30 days, we must retain the flexibility to bring the
appropriate quantum of attention to bear. See In re Siggers, 132
F.3d at 336 (noting that interpreting section 2244(b)(3)(D) as
advisory alleviates separation of powers and due process concerns);
see also Galtieri v. United States, 128 F.3d 33, 36-37 (2d Cir.
1997).
 This is an exceptional case. AEDPA's successive petition
provisions are relatively new and Rodriguez's application raises
important questions about them. It was thus impracticable to
comply with AEDPA's 30-day time limit. Notwithstanding this
necessary delay, we retain jurisdiction to rule on Rodriguez's
application.
 B. The Merits.
 AEDPA does not amplify the standard by which a court of
appeals is to gauge the "prima facie showing," 28 U.S.C. 
2244(b)(3)(C), that a prospective repeat petitioner must make. The
Seventh Circuit recently articulated its understanding of this
requirement:
 By "prima facie showing" we understand [it to
 be] simply a sufficient showing of possible
 merit to warrant a fuller exploration by the
 district court. . . . If in light of the
 documents submitted with the application it
 appears reasonably likely that the application
 satisfies the stringent requirements for the
 filing of a second or successive petition, we
 shall grant the application.

Bennett v. United States, 119 F.3d 468, 469-70 (7th Cir. 1997); seealso Woratzeck v. Stewart, 118 F.3d 648, 650 (9th Cir. 1997). We
adopt this interpretation, but emphasize that despite its
superficially lenient language, the standard erects a high hurdle. 
This is as it should be: in formulating the AEDPA amendments, 
Congress intended "to curb the abuse of the statutory writ of
habeas corpus," H.R. Conf. Rep. No. 104-518, at 111 (1996),
reprinted in 1996 U.S.C.C.A.N. 924, 944, and, accordingly,
heightened the already formidable barriers to second or successive
habeas petitions.
 We next size the petitioner's case against this template. 
In the post-AEDPA era, a state prisoner who seeks pre-clearance for
filing a second or successive petition has two avenues open to him. 
Because Rodriguez does not press any fact-based claim, we focus on
section 2244(b)(2)(A) to the exclusion of section 2244(b)(2)(B).
 At Rodriguez's trial in 1971, the jury instructions on
reasonable doubt included several statements that likened proof
beyond a reasonable doubt to proof to a moral certainty. In Cage,
the Supreme Court explained that some moral certainty instructions
"allow a finding of guilt based on a degree of proof below that
required by the Due Process Clause." 498 U.S. at 41; compareVictor v. Nebraska, 511 U.S. 1, 21-22 (1994) (holding that
reference to "moral certainty" in a reasonable doubt instruction
does not violate due process as long as the charge, taken as a
whole, reasonably conveys the proper "beyond a reasonable doubt"
standard). Rodriguez asserts that Cage announced a new rule of
constitutional law, that at the time of his last habeas petition
(1984) the Cage rule was unavailable to him, and that the Supreme
Court has made the rule retroactive to cases on collateral review.
 We need not tarry on the first tine of Rodriguez's three-
pronged claim. A string of federal appellate decisions have held 
that Cage announced a new rule of constitutional law, see, e.g.,
Adams v. Aiken, 41 F.3d 175, 178-79 (4th Cir. 1994) (Adams III);
Nutter v. White, 39 F.3d 1154, 1157-58 (11th Cir. 1994); Skelton v.
Whitley, 950 F.2d 1037, 1043-44 (5th Cir. 1992), and we see no
principled basis for sundering this unbroken strand.
 Nor do we need to linger on the "previously unavailable"
prong. The time frame of the applicant's previous habeas petition
provides the coign of vantage from which we assess whether a rule
of constitutional law was "previously unavailable." See In re
Medina, 109 F.3d 1556, 1566 (11th Cir. 1997). Rodriguez filed his
last habeas petition some six years prior to the Court's opinion in
Cage. Despite this temporal separation, the Commonwealth maintains
that a Cage claim (or its functional equivalent) was available to
Rodriguez at an earlier date because this court had addressed
constitutional challenges to moral certainty instructions prior to
1984. See, e.g., United States v. Drake, 673 F.2d 15 (1st Cir.
1982); Bumpus v. Gunter, 635 F.2d 907 (1st Cir. 1980); United
States v. DeVincent, 632 F.2d 147 (1st Cir. 1980); United States v.
Indorato, 628 F.2d 711 (1st Cir. 1980). This is thin gruel, served
cold; it overlooks that we uniformly rejected these challenges
prior to Cage's debut. See Drake, 673 F.2d at 21; Bumpus, 635 F.2d
at 912; DeVincent, 632 F.2d at 153; Indorato, 628 F.2d at 720-21. 
Consequently, Rodriguez has made a prima facie showing that, in
1984, a moral certainty claim was not available to him in any
meaningful sense. See Reed v. Ross, 468 U.S. 1, 17 (1984)
(explaining that when a Supreme Court decision marks a "clear break
from the past," the rule embodied therein "will almost certainly
have been" previously unavailable in the requisite sense).
 The remaining question is whether Cage's rule has been
"made retroactive to cases on collateral review by the Supreme
Court." 28 U.S.C. 2244(b)(2)(A). History furnishes valuable
perspective. In pre-AEDPA days, a petitioner could obtain relief
only if he demonstrated a violation of a rule of constitutional law
established at the time his conviction became final. See Teague v.
Lane, 489 U.S. 288, 308-10 (1989). The case law allowed for two
classes of exceptions to this general approach. If a new rule
"place[d] certain kinds of primary, private individual conduct
beyond the power of the criminal law-making authority to
proscribe," id. at 311, or if it established a "watershed" principle
of criminal procedure that implicates the fundamental fairness and
accuracy of the criminal proceeding, id. at 311-12, then a
petitioner could obtain the rule's benefit retroactively on
collateral review. 
 Inferior federal courts played a significant, though
circumscribed, role in deciding the applicability vel non of these
isthmian exceptions. In the absence of a direct statement by the
Supreme Court, the lower federal courts were free to determine, in
the first instance, whether a particular rule of constitutional law
merited retroactive application, and thus to determine whether (and
if so, to what extent) a habeas petitioner might take refuge in a
new rule of constitutional law. See Caspari v. Bohlen, 510 U.S.
383, 389 (1994). Under a conventional pre-AEDPA Teague analysis,
several federal courts of appeals found that Cage fit within
Teague's second exception and therefore applied retroactively to
cases on collateral review. See Adams III, 41 F.3d at 178-79;
Nutter, 39 F.3d at 1157-58. But see Humphrey v. Cain, 120 F.3d
526, 528-30 (5th Cir.) (suggesting that Cage claims fall within
Teague's second exception, but ruling that a prior panel decision
precluded retroactive application), reh'g en banc granted, 120 F.3d
534 (5th Cir. 1997).
 Rodriguez suggests that AEDPA merely memorializes
Teague's approach to retroactivity. Were that so, opinions such as
Adams III and Nutter would possess considerable force. But,
Rodriguez's premise is wrong: AEDPA does not codify Teague. To
the contrary, its plain language instructs that only new rules
rendered retroactive on collateral review "by the Supreme Court" may
inure to the benefit of habeas petitioners.
 AEDPA contains no overt limitation on the types of new
rules that the Supreme Court may declare retroactive on collateral
review, but it invests the Court with the sole authority to make
such declarations. Insofar as second or successive petitions are
concerned, the statute's precedent-limiting provision, fairly read,
eliminates the lower federal courts' role in deeming new rules of
constitutional law a permissible basis for habeas relief. See In
re Vial, 115 F.3d 1192, 1196-97 (4th Cir. 1997) (en banc); In re
Hill, 113 F.3d 181, 184 (11th Cir. 1997) (per curiam); cf. Bocianv. Godinez, 101 F.3d 465, 471 (7th Cir. 1996) (noting that under
the AEDPA amendments to 28 U.S.C. 2254(d)(1), "[f]ederal courts
are no longer permitted to apply their own jurisprudence, but must
look exclusively to Supreme Court case law"). Consequently, an
application to file a second or successive habeas petition must
point to a Supreme Court decision that either expressly declares
the collateral availability of the rule (such as by holding or
stating that the particular rule upon which the petitioner seeks to
rely is retroactively available on collateral review) or applies
the rule in a collateral proceeding. See In re Vial, 115 F.3d at
1197; In re Hill, 113 F.3d at 184; see also H.R. Conf. Rep. No.
104-518, at 111.
 Rodriguez's fallback position on the question of
retroactivity hinges on his assertion that the Court's dispositions
in either of two cases Ivan V. v. City of New York, 407 U.S. 203
(1972) (per curiam), or Adams v. Evatt, 511 U.S. 1001 (1994) (Adams
II) meet AEDPA's requirement and confirm Cage's retrospective
availability on collateral review. Neither case is persuasive on
this point.
 Ivan V. is a direct lineal descendant of In re Winship,
397 U.S. 358 (1970). Winship held that the Due Process Clause
"protects the accused against conviction except upon proof beyond
a reasonable doubt of every fact necessary to constitute the crime
with which he is charged." Id. at 364. In Ivan V., the Supreme
Court imbued this holding with "complete retroactive effect." 407
U.S. at 205. Rodriguez reasons that a Cage error is a species of
Winship error, and that Ivan V. accordingly supplies the requisite
statement of retroactivity. Rodriguez's argument is puzzling
since, taken at face value, it suggests that Cage did not announce
a new rule of constitutional law at all, but, rather, amounted to
no more than a specific application of Winship. If that is so,
then Rodriguez stumbles at the starting gate, for section
2244(b)(2)(A) requires that a person who seeks leave to prosecute
a second or successive habeas petition predicate his claim on a newrule of constitutional law.
 In all events, Rodriguez's position is unavailing. Ivan
V. is utterly silent on Cage's retroactivity an entirely
unsurprising circumstance given that Ivan V. predates Cage by some
eighteen years and we do not discern in the text of Ivan V. any
intention on the part of the Supreme Court to declare a blanket
rule of retroactivity for every conceivable application or
extension of Winship.
 The second authority upon which the petitioner relies 
the Supreme Court's summary reconsideration order in Adams II 
derives from the Fourth Circuit's opinion in Adams v. Aiken, 965
F.2d 1306 (4th Cir. 1992) (Adams I), in which the court of appeals
held that Cage did not apply retroactively for Teague purposes. 
Adams I presented the Justices with a matchless opportunity to
determine Cage's availability on collateral review, but they did
not reach the retroactivity issue. Rather, the Court granted
certiorari, vacated the judgment, and remanded the matter for
reconsideration in light of Sullivan v. Louisiana, 508 U.S. 275
(1993). See Adams II, 511 U.S. at 1001. The Fourth Circuit then
ruled that Cage fell within one of the Teague exceptions, and
declared Cage retroactively applicable on collateral review for
Teague purposes. See Adams III, 41 F.3d at 178-79.
 Despite the fact that the Supreme Court itself did not
make any statement about Cage's retroactivity in Adams II,
Rodriguez posits that the Court's vacation and remand were
tantamount to a reversal of the Fourth Circuit, and that Adams II thereby operates as a de facto declaration that Cage applies
retroactively. The short, dispositive answer to this asseveration
is that a summary reconsideration order does "not amount to a final
determination on the merits." Henry v. City of Rock Hill, 376 U.S.
776, 777 (1964). Such an order merely directs the lower court to
reexamine the case against the backdrop of some recent, intervening
precedent; it does not compel a different result. See id.; seealso Robert L. Stern et al., Supreme Court Practice 279-80 (6th ed.
1986). We are unwilling to read into Adams II any more portentous
meaning.
 We recognize that the Ninth Circuit, on similar facts,
has held that Adams II is enough to support a prima facie case of
Cage retroactivity. See Nevius v. Sumner, 105 F.3d 453, 462 (9th
Cir. 1996). Yet the Nevius panel did not discuss the essential
nature of summary reconsideration orders, and the result reached in
Nevius appears to run at cross purposes not only with the Court's
contrary instruction, see Henry, 376 U.S. at 777, but also with
section 2244(b)(2)(A)'s clear command that those who would
prosecute second or successive habeas petitions must affirmatively
show that they seek the benefit of a rule made retroactive "by the
Supreme Court." For these reasons, we respectfully decline to
follow Nevius.
III. CONCLUSION
 We need go no further. AEDPA sets tough standards that
severely restrict state prisoners' abilities to file second or
successive habeas petitions. Although at this stage an applicant
need only make a prima facie showing that a claim comports with
section 2244(b)(2)(A), that provision's prerequisites are
nonetheless stringent. Rodriguez adequately demonstrates that his
claim of Cage error rests on a new rule of constitutional law that
was unavailable when he last filed a habeas petition, but he is
unable to identify a Supreme Court edict that renders Cageretroactively applicable to cases on collateral review. In the
end, that shortcoming defeats his application.

 The application for permission to file a third habeas
corpus petition is denied.