**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, LOCAL 834, Plaintiff,**

**v.**

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

**No. 81–6–00762.**

United States Court of International Trade.

July 10, 1984.

Harry C. Citrino, Jr., Philadelphia, Pa., for plaintiff.

Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on the brief), for defendant.

RE, Chief Judge:

Plaintiff, on behalf of its members who were employed at the Heintz Division, Philadelphia, Pennsylvania (Heintz) plant of the Kelsey-Hayes Company (Kelsey-Hayes), challenges the Secretary of Labor's denial of certification of eligibility for worker adjustment assistance benefits under the Trade Act of 1974, 19 U.S.C. §§ 2101–2487 (1982). The Secretary determined that plaintiff's petition did not satisfy the eligibility criteria of section 222(3) of the Act, 19 U.S.C. § 2272(3). Specifically, he found that imports of articles "like or directly competitive" with those produced by Kelsey-Hayes did not contribute importantly to the separation from employment of plaintiff's members. 46 Fed.Reg. 17,928–29 (1981).

After a review of the administrative record, and upon consideration of the arguments of the parties, the court holds that the Secretary's denial of certification is supported by substantial evidence, and is in accordance with law.

On July 22, 1980, plaintiff, on behalf of its members, filed a petition with the Secretary for certification of eligibility for trade adjustment assistance benefits. The petition was consolidated with one filed by employees from the Kelsey-Hayes' Romulus, Michigan plant because both groups produced the identical article, automotive wheels. Subsequently, the Secretary commenced an investigation and published a notice of the receipt of plaintiff's petition and of the investigation. 45 Fed.Reg. 58,-269–70 (1980).

Section 222 of the Act provides, in pertinent part, that the Secretary shall certify a petitioning group of workers as eligible for trade adjustment assistance benefits if he determines:

(1) that a significant number or proportion of the workers in such workers'

firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

*Id.*

Plaintiff contended that increased imports of automobiles and automotive parts "contributed importantly" to the decline in sales and production at the Heintz plant, and ultimately to the separation from employment of its members, thereby entitling them to certification.

The Secretary's investigation disclosed that the Heintz plant employees produced automotive component parts for sale to manufacturers of cars and trucks. In particular, they produced wheels and major automotive body parts, such as fenders, doors and hoods, primarily for use as original equipment in the manufacture of new cars and trucks. A small percentage of the total production of wheels and body parts at the Heintz plant was for the replacement or aftermarket.

As to wheels, the Secretary's investigation showed that Kelsey-Hayes produced wheels, identical to those made at the Heintz plant, at some of its other plants located in Canada and Mexico, as well as, the United States. The production from the Canadian and Mexican plants was dedicated primarily to sales in markets other than the United States. Imports by Kelsey-Hayes amounted to a relatively small proportion of its total domestic production of wheels during the period January 1978 through May 1980.

The Secretary's investigation further disclosed that, each year from 1975 through 1978, domestic production of wheels for motor vehicles increased in value, with a 3.4% increase from 1977 to 1978. From 1978 to 1979, however, production of wheels decreased in value by 9.9%.

The investigation also revealed that imports of automotive wheels increased in value each year from 1975 through 1978. Yet, from 1978 to 1979, imports decreased in value by 12.1%. Moreover, during the first three quarters of 1980, wheel imports continued to decrease in value. Indeed, imports decreased by 35.4% compared to the same period in 1979.

As part of his investigation, to determine the level of imports of wheels and major body parts during the period under investigation, the Secretary conducted a survey of those customers of Kelsey-Hayes who accounted for the majority of sales from the Heintz plant. The survey revealed that these customers increased purchases of wheels from both domestic and foreign sources in model year 1980 as compared to model year 1979, and projected decreased purchases from both sources in model year 1981 compared to 1980. The survey also indicated that, as to total purchases, customer reliance on imports remained virtually unchanged during the January 1978 to May 1980 period.

As to major automotive body parts, the Secretary's investigation revealed that imports of these component parts were negligible during the period under investigation. The Secretary's customer survey confirmed this finding, and evidenced a strong preference among the automobile manufacturers for domestic sources for body parts because of their close geographical proximity to the car and truck assembly plants. Since automotive body parts must be made according to specifications for each make and model vehicle, the automobile manufacturers have found it easier to monitor and test the accuracy and quality of the components by using domestic suppliers of parts. The American automobile manufacturers also indicated that they found it economically advantageous to buy parts from domestic sources because the shipping

charges made it cost prohibitive to import the identical parts from foreign manufacturers.

Based on these findings, the Secretary concluded that plaintiff's petition failed to satisfy the third criterion of section 222, stating that "with respect to wheels, a survey of customers indicated that increased imports did not 'contribute importantly' to worker separations at the firm. With respect to [major body components, such as] hoods, fenders and doors, United States imports are negligible." Hence, on March 20, 1981, the Secretary issued a negative determination on the petition. 46 Fed.Reg. 17,928–29 (1981).

Plaintiff then sought administrative reconsideration, claiming that the Secretary erred on two grounds in his interpretation of the "contributed importantly" criterion found in section 222(3). First, plaintiff maintained that increased imports of wheels, previously manufactured in the United States, and now produced by Kelsey-Hayes in Canada and Mexico, resulted in a reduced demand for the wheels produced at the Heintz plant, and the subsequent separation of the workers. Second, plaintiff claimed that increased imports of wholly assembled cars caused a down-turn in sales of one of Kelsey-Hayes' primary customers, General Motors, which resulted in a reduced demand for Kelsey-Hayes' wheels and body components, and led to the separation from employment of plaintiff's members.

The Secretary, in a letter dated April 17, 1981, dismissed plaintiff's application for reconsideration, and explained that, while it is true that Kelsey-Hayes imported wheels, the amount imported represented a very small proportion of its total domestic production. Moreover, the Secretary found that the trend in company imports from its Canadian and Mexican plants paralleled the production of wheels at the Heintz plant, that is, production increased in 1979 and decreased in 1980. Under these circumstances, the Secretary concluded that imports from Canada and Mexico could not have "contributed importantly" to the separation from employment of the workers at the Heintz plant.

The Secretary also rejected plaintiff's interpretation of the "contributed importantly" standard, stating that plaintiff's use of a fully-assembled automobile as the basis of comparison for determining the existence of import injury was improper. The Secretary noted that, in a pure economic sense, workers producing components, such as wheels, "may be severely impacted" by increased imports of a finished article, namely, an automobile. Nevertheless, in making his determination on certification, the Secretary stated that he was constrained by the statute to compare only those articles "like or directly competitive" with the article under investigation, and cannot consider those products which incorporate the subject article as a component part. Plaintiff, thereafter, commenced this action seeking judicial review of the Secretary's negative determination.

The Trade Act of 1974 empowers the court to review a decision by the Secretary which denies a petition for certification of eligibility for trade adjustment assistance benefits to assure that the determination is supported by substantial evidence contained in the administrative record, and is in accordance with law. Trade Act of 1974, § 284(b), 19 U.S.C. § 2395(b) (1982).

Plaintiff advances several arguments for the reversal of the Secretary's negative determination. Initially, plaintiff, citing *Paden v. United States Department of Labor*, 562 F.2d 470, 475 (7th Cir.1977) and *International Union, United Auto. Aerospace and Agricultural Implement Workers v. Marshall*, 627 F.2d 559, 562 (D.C.Cir. 1980), contends that the Heintz plant qualifies as an individual plant, as contemplated by the Act, and is therefore, an "appropriate subdivision" which fully satisfies the statutory criteria for certification.

■ A review of the briefs of the parties indicates that the parties are not in dispute as to whether the Heintz plant is an "appropriate subdivision" for the purposes of certification under section 222(3) of the Trade Act of 1974. The fact that the Heintz plant is an "appropriate subdivision" does not, in and of itself, automatically render plaintiff's members certifiable as

eligible for trade adjustment assistance benefits. Section 222 also requires that plaintiff's petition satisfy each of the criteria necessary for certification, including whether increased imports of articles "like or directly competitive" with the articles produced by the Heintz plant workers "contributed importantly" to their separation from employment.

■ As to these other requirements of section 222, plaintiff claims that the Secretary's findings regarding a decrease in sales, production, and imports of motor vehicles and automotive component parts, do not reflect a true picture of the wheel and automotive body parts' industries. In particular, plaintiff contends that the Secretary erred in utilizing a one year base period for comparison in making his certification determination. Plaintiff argues that, rather than using, as the basis of comparison, the year immediately preceding the Heintz plant employees' separation, the Secretary should have used a ten year period encompassing 1973 through 1983. Specifically, plaintiff urges that the court require the Secretary to gather data on the total number of vehicles produced and sold in the United States prior to 1973, and compare that data with the total number of vehicles, foreign and domestic, sold in the United States from 1973 through 1983. Plaintiff maintains that the use of a ten year base period will permit a more realistic assessment of the impact of increased automobile imports upon the automobile manufacturers, and those companies which supply them with component parts.

What constitutes an appropriate base period was examined previously in the *Paden* case. In *Paden*, the Secretary compared import levels in the year of separation with import levels in the immediately preceding year to determine the existence of "increases of imports," as contemplated by section 222. In *Paden*, the plaintiff contended that further comparisons should be made, such as a comparison of the year of separation with prior years, and a comparison between prior years. The Secretary contended that confining consideration to imports during the year of separation and the immediately preceding year allowed him to

focus on those imports which were most likely to affect employment in the year of separation. This, the Secretary maintained, diminished the effect of those factors which, while affecting employment, were not intended as being within the coverage of the Act. In affirming the Secretary, the Court of Appeals for the Seventh Circuit held that, in the absence of a valid reason to consider a different base period, the use of only the year preceding the year of separation, as the base period for determining "increases of imports," was not erroneous. *Paden* at 474.

Similarly, in this case, the Secretary confined his investigation to the year of separation, 1980, and the prior year, 1979, in order to assess more accurately the injury to the domestic workers, such as those at the Heintz plant, as a result of increases of imports. Plaintiff, however, has not submitted a persuasive argument for this Court to consider a base period other than the one utilized by the Secretary. Therefore, as indicated in *Paden*, plaintiff's claim cannot be sustained.

■ Plaintiff next contends that, while overall demand for new automotive component parts remained constant or increased, Kelsey-Hayes had parts, identical to those produced at the Heintz plant, manufactured at its Canadian and Mexican plants which were imported into the United States. This, plaintiff asserts, resulted in a reduced demand for the automotive parts produced at the Heintz plant, which in turn, was an important cause in the workers' separation from employment.

Under section 222 of the Act, the Secretary is empowered to determine if sales or production, or both, and employment declined at the firm being investigated. If they did, he also must determine whether the decline was caused by increased imports of goods "like or directly competitive" with those produced by the firm.

In reviewing the administrative record, the court finds that overall imports of wheels for new cars and trucks decreased in value both absolutely, and in relation to domestic production in 1979 compared to 1978, and continued to decline absolutely

during the first nine months of 1980 compared to the same period in 1979. As to Kelsey-Hayes, wheel imports from its Canadian and Mexican plants were *de minimis* compared to its total domestic production during the period covering January 1978 through May 1980. Moreover, the increase in the value of those wheels imported by Kelsey-Hayes from its foreign plants accounted for only 2.9% of the sales decline experienced by the Heintz plant during the first five months of 1980 compared to the same period in 1979. As to the comparison between 1979 and 1978, the record shows an upward trend in total domestic sales of wheels by Kelsey-Hayes both in quantity and value. In short, wheel imports from Kelsey-Hayes' foreign plants mirrored the company's domestic output, increasing in 1979 and decreasing in 1980. Under these circumstances, the court concludes that increased imports by Kelsey-Hayes from Canada and Mexico could not have "contributed importantly" to the Heintz plant workers' separation from employment.

Regarding the production of major body parts, such as hoods, fenders and doors, at the Heintz plant, the record reveals that imports of these products were negligible during the period under investigation. Industry sources indicated that the primary reason for the minimal amount of imports was the prohibitive cost of shipping these parts from foreign suppliers to the automobile assembly plants in the United States.

On the basis of the foregoing, it is clear that there were no increases of either imported wheels or major automotive body parts like or directly competitive with the articles produced by the workers at the Heintz plant which contributed importantly to their separation from employment, and to Heintz' decline in sales or production within the meaning of section 222(3) of the Trade Act of 1974. Indeed, plaintiff has offered nothing more than mere allegations to substantiate its position. These unsubstantiated assertions are wholly insufficient to sustain a finding by the Secretary that would justify the certification of plaintiff's members.

Plaintiff's final contention is that the Secretary erred in not using an automobile as the article of comparison to determine import injury, and the cause of the separation of the Heintz plant workers. Whether an end product is like or directly competitive with one of its component parts, so as to permit certification of eligibility for trade adjustment assistance benefits, has been considered on several occasions by the Court of Appeals for the District of Columbia, as well as this Court. *See United Shoe Workers v. Bedell,* 506 F.2d 174, 179 (D.C.Cir.1974); *Machine Printers and Engravers Ass'n v. Marshall,* 595 F.2d 860, 862 (D.C.Cir.1979); *Morristown Magnavox Former Employees v. Marshall,* 671 F.2d 194, 197 (D.C.Cir.1982); *Gropper v. Donovan,* 6 C.I.T. —— at ——, 569 F.Supp. 883 (1983); *ACTWU, Local 1627 v. Donovan,* 7 C.I.T. —— at ——, 587 F.Supp. 74 (1984); *Holloway v. Donovan,* 7 C.I.T. —— at ——, 585 F.Supp. 1427 (1984).

■ Under this line of cases, the test is clear: the imported article, which allegedly injured the domestic market, "must be found to be 'interchangeable with or substitutable for' the article under investigation." *Holloway,* at ——, 585 F.Supp. at 1430 (quoting *Machine Printers and Engravers Ass'n,* 595 F.2d at 862). Based on this test, a component, which is adversely impacted by increased imports of a finished article incorporating that component, cannot be like or directly competitive with the finished product. *Bedell, supra* at 177–78.

This is particularly true in the cases which pertain to automobiles and automotive components. Both *ACTWU, Local 1627* and *Holloway* examined whether an imported automobile was "like or directly competitive" with a component part incorporated into a domestically manufactured automobile so as to render the subject workers certifiable as eligible for trade adjustment assistance benefits. In *ACTWU, Local 1627,* the comparison was between an automobile and automotive lead acid batteries, and in *Holloway,* between a car and injection molded plastic parts, such as bumper guards.

After a review of the applicable case law, in both *ACTWU, Local 1627* and *Holloway,* this Court concluded that the component

part in question was neither interchangeable with nor substitutable for the finished product, an automobile. The Secretary's determinations were, therefore, affirmed since the subject workers were not certifiable under section 222 of the Trade Act of 1974.

In the present action, while the articles under investigation, wheels and major automotive body parts, are essential to the production of an automobile, it is apparent that they are neither interchangeable with nor substitutable for an automobile. Hence, plaintiff's claim that the Secretary erred in his interpretation and application of the "like or directly competitive" requirement of section 222(3) is not sustainable.

In view of the foregoing, it is the determination of this Court that the Secretary of Labor's denial of certification is supported by substantial evidence, and in accordance with law. Accordingly, the Secretary's determination is affirmed, and plaintiff's action is dismissed.