**Samuel KATUNICH, Jane H.M. Rigo and Guy Serra, Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor, Defendant.**

**Court No. 81–9–01158.**

United States Court of International Trade.

Sept. 6, 1984.

Samuel Katunich, Jane H.M. Rigo and Guy Serra, pro se.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Sheila N. Ziff, Washington, D.C., on the brief), for defendant.

RE, Chief Judge:

In this action, plaintiffs, on behalf of the former employees of U.S. Steel's Monroeville, Pennsylvania, research laboratory, (Monroeville laboratory), challenge the denial of certification of eligibility for trade adjustment assistance benefits made by the Secretary of Labor pursuant to the Trade Act of 1974. 19 U.S.C. §§ 2101–2487 (1982). The Secretary found that the former employees of the Monroeville laborato-

ry were employed by a firm that did not produce an article "like or directly competitive" with an article which was adversely affected by increased imports. Hence, they were not eligible for certification for trade adjustment assistance benefits.

Two questions are presented for determination:

(1) whether the failure of the Secretary to make his eligibility determination within the sixty day period set forth in section 223(a) of the Trade Act of 1974, 19 U.S.C. § 2273(a), deprives him of jurisdiction; and, if not

(2) whether the Secretary's final determination, that increased imports did not contribute importantly to plaintiffs' separation from employment, was supported by substantial evidence, and was in accordance with law.

Since the court finds that section 223(a) is not a "mandatory" statutory provision, and that plaintiffs were not prejudiced by the Secretary's non-compliance with that section, it is the holding of the court that the Secretary's jurisdiction is unaffected. The court also holds that, since the method utilized by the Secretary in interpreting the existence of "increases of imports" was defective, the Secretary's final determination was not supported by substantial evidence, and was not in accordance with law.

### Background

In *Katunich v. Donovan*, 5 CIT, Slip Op. 83–60 (June 17, 1983), this Court previously reviewed the administrative record in this action, and found that it was incomplete since the Secretary had failed to include the factual basis for his final determination. Specifically, the court found that:

[a]lthough the record contains what appears to be production data for various U.S. Steel facilities for the year 1979, it is devoid of comparable data for those same facilities for the relevant months in 1980. Also conspicuously absent from the record is any import data for like or directly competitive steel products for the applicable period.

5 CIT, slip op. at 2. Under these circumstances, the court was unable properly to assess the record, and weigh the competing needs of the parties for the information sought to be disclosed. . Consequently, the court remanded the action to the Secretary with instructions that he furnish the court with the basis of his final determination.

In compliance with the court's order, the Secretary conducted a further investigation, and, on July 11, 1983, submitted a supplemental administrative record with additional information to support his determination. After reviewing the administrative record a second time, and considering the plaintiffs' need for data in the prosecution of their case, as well as the Secretary's need to obtain confidential business information for future administrative proceedings, on November 3, 1983, the court granted plaintiffs' motion for disclosure. *Katunich v. Donovan*, 6 CIT ——, 576 F.Supp. 636 (1983). The court also directed that this action be submitted for determination upon the administrative record as prescribed by Rule 56.1 of this Court.

The Secretary denied plaintiffs' petition because it failed to satisfy the third eligibility criterion, *i.e.*, plaintiffs' employer, U.S. Steel, did not produce an article "like or directly competitive" with an article "adversely affected" by increased imports. 19 U.S.C. § 2272(3) (1982).

On August 13, 1980, plaintiffs, on behalf of the employees at the Monroeville laboratory of U.S. Steel, filed a petition with the Secretary for certification of eligibility for trade adjustment assistance benefits. Plaintiffs contended that increased imports of steel "contributed importantly" to the decline in sales and production at U.S. Steel, and ultimately to their separation from employment. Plaintiffs, therefore, contended that they were entitled to certification.

Subsequently, the Secretary commenced an investigation and published a notice of the receipt of plaintiffs' petition and of the investigation. 45 Fed.Reg. 59,457 (1980). The Secretary's investigation disclosed that workers at the Monroeville laboratory provided technical support services for U.S. Steel. The laboratory, staffed primarily by scientists and technicians, operates complex analyzing and computing equipment as well as a small scale steelmaking facility. The functions of the Monroeville laboratory include: 1) the development of new manufacturing processes; 2) the creation of new products; 3) the determination, in conjunction with engineering and accounting personnel, of the most profitable product lines for the company; and 4) the improvement of quality control.

The Secretary's investigation further disclosed that, on April 7, 1978, the Monroeville laboratory workers were previously certified by the Secretary as eligible for adjustment assistance benefits. 43 Fed. Reg. 17,088 (1978).

In that prior determination, the Secretary found that the employees of the Monroeville laboratory performed services which were integral to the production of all steel products produced by U.S. Steel. The Secretary also found that the employees, totally or partially separated from employment during the period from October 15, 1975 through June 26, 1977, were certified as eligible for adjustment assistance, since they had been engaged in employment related to approximately fifty percent of U.S. Steel's total production.

■ Pursuant to the Trade Act of 1974, in order for a group of workers to be eligible for certification, they must have been engaged in employment related to the production of an article "adversely affected" by increased imports. 19 U.S.C. § 2272(3) (1982). A group of workers may also obtain certification, however, if their separation from employment was caused importantly by a reduction for their services originating at facilities whose workers' independently met the statutory criterion. *Katunich v. Donovan*, 6 CIT ——, 576 F.Supp. 636. Thus, the service workers at the Monroeville laboratory were certified as eligible for assistance in April, 1978, because fifty percent of the workers engaged in *production* at various U.S. Steel

plants had been *independently certified* as eligible for adjustment assistance benefits.

As to plaintiffs' petition in this case, the Secretary found that U.S. Steel's economic position had changed from that existing at the time of the previous certification. The average number of employees at the Monroeville laboratory decreased each year since 1978, with the largest decline occurring in 1980. Contemporaneously, the number of employees engaged in *production* at U.S. Steel plants who were certified as eligible for adjustment assistance also decreased. Similarly, in 1979 the number of *production* workers certified as eligible for such assistance accounted for only 8.5 percent of U.S. Steel's total production during 1979. Based on these findings, the Secretary concluded that the workers at the Monroeville laboratory did not produce an "article" as required for certification under section 222, and, therefore, issued a negative determination on plaintiffs' petition. 46 Fed.Reg. 35,825 (1981).

Plaintiffs requested a reconsideration of the Secretary's negative determination. In dismissing plaintiffs' application for reconsideration, the Secretary explained that plaintiffs' contention, that their separation from employment was due to an "increase of imports" affecting domestic steel shipments, does not automatically justify their certification. The Secretary reiterated that plaintiffs' eligibility is based upon the certification of *production* workers at the various U.S. Steel mills, and that, currently, the production workers are "inadequate" to provide such a basis. On September 4, 1981, pursuant to section 284(a) of the Trade Act of 1974, 19 U.S.C. § 2395(a)(1982), by letter complaint, plaintiffs commenced this action seeking judicial review of the Secretary's negative determination.

## Jurisdiction

Initially, plaintiffs contend that they are entitled to relief as a result of the Secretary's failure to follow the procedural requirements of the Trade Act of 1974. Specifically, plaintiffs allege that their rights were infringed by the Secretary's action,

since it was made approximately ten months after the filing of their petition, in violation of the prescribed sixty day statutory period found in section 223(a) of the Trade Act of 1974, 19 U.S.C. § 2273(a) (1982).

The Secretary does not dispute that he did not observe the statutory sixty day period prescribed in the statute. Nevertheless, he maintains that, since Congress failed to include any provisions for noncompliance, the sixty day provision is not mandatory. Furthermore, the Secretary asserts that his delay in making the determination was not an unreasonable one, since during the applicable period there was a severe backlog of cases requiring investigations on the *production* workers at U.S. Steel. Finally, the Secretary submits that, as a result, his determination as to plaintiffs' petition could not have been made before these investigations were concluded.

Section 223(a) of the Trade Act of 1974, 19 U.S.C. § 2273(a) provides:

(a) As soon as possible after the date on which a petition is filed under section 2271 of this title, but in any event not later than 60 days after that date, the Secretary shall determine whether the petitioning group meets the requirements of section 2272 of this title and shall issue a certification of eligibility to apply for assistance under this part covering workers in any group which meets such requirements. Each certification shall specify the date on which the total or partial separation began or threatened to begin.

*Id.*

It is axiomatic that the Secretary of Labor, as a public official, should comply with statutory provisions of law. *Perkins v. Lukens Steel Co.,* 310 U.S. 113, 129, 60 S.Ct. 869, 877, 84 L.Ed. 1108 (1940); *Joanna Western Mills Co. v. United States,* 64 Cust.Ct. 218, 227, C.D. 3983, 311 F.Supp. 1328, 1335 (1970). The question presented for determination, however, is the legal effect of the Secretary's failure to comply with a provision of section 223(a) of the

Trade Act of 1974. The threshold question, therefore, is whether the sixty day requirement contained in section 223(a), in the traditional language of the courts, is a "mandatory" or "directory" provision of law.

■ It is well established that in determining whether a provision is mandatory or directory, one must "look to the subject matter; consider the importance of the provision that has been disregarded, and the relation of that provision to the general object intended to be secured by the Act; ...." *Joanna Western*, 311 F.Supp. at 1335 (quoting *Howard v. Bodington*, L.R. 2 P.Div. 203, 211 (1877)).

■ The primary purpose of the trade adjustment assistance program is to ameliorate the consequences of economic dislocation occasioned by increased imports. Also, because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the interest of the petitioning employees. *Local 167, International Molders and Allied Workers' Union v. Marshall*, 643 F.2d 26, 31 (1st Cir.1981). It is clear that Congress also desired the expeditious treatment of adjustment assistance petitions. It should be noted, however, that the Act "neither purports to restrain the Secretary from acting after 60 days have passed nor specifies that an adverse consequence follows after the Secretary's failure to comply." *Usery v. Whitin Machine Works, Inc.*, 554 F.2d 498, 501 (1st Cir.1977).

In *Usery*, the Court of Appeals for the First Circuit examined whether the Secretary's failure to make his eligibility determination within the sixty day period deprived him of jurisdiction. In that case, the Secretary filed a complaint to enforce a subpoena that ordered defendant Whitin to furnish material the Secretary deemed necessary for his determination. Whitin interposed the defense that the subpoena exceeded the Secretary's authority since it was untimely and overbroad. The district court dismissed the complaint on the ground that the sixty day period was a limitation on the Secretary's jurisdiction, and that, by failing to make an eligibility determination within that period, the Secretary lost his authority to proceed with the matter.

In reversing the district court's decision, the Court of Appeals held that the Secretary was not deprived of jurisdiction by reason of his failure to make an eligibility determination within sixty days. The court concluded that the decision of the district court was at variance with the remedial nature of the trade adjustment assistance program, since the objective of the Act is to provide broad assistance to all workers who become unemployed as a result of increased imports. Hence, the court reasoned that "it would be ironic, indeed, to convert this seemingly remedial provision into one which would have the effect of denying any benefits." 554 F.2d at 502. Consequently, the Court of Appeals held that the sixty day provision contained in section 223(a) was not a mandatory provision of law.

The court, however, chose not to refer to the provision as directory, since it expressed "no opinion as to whether workers or their representative could enforce compliance with the time limitation by way of an action in the nature of mandamus." 554 F.2d at 503. In addition to the non-mandatory nature of the provision, it is also well established that a court will not set aside any action unless the procedural errors complained of were prejudicial to the parties seeking to have the action declared invalid. *John V. Carr & Son, Inc. v. United States*, 69 Cust.Ct. 78, 87, C.D. 4377, 347 F.Supp. 1390, 1397 (1972), aff'd, 61 CCPA 52, C.A.D. 1118, 496 F.2d 1225 (1974); *Abbott v. Donovan*, 6 CIT ——, 570 F.Supp. 41, 49 (1983).

■ This Court, guided by the reasoning of *Usery*, agrees with the Secretary's assertion that the procedural provision in question is not mandatory. The court finds that this statutory requirement is intended

to secure order and dispatch in proceedings for adjustment assistance benefits. The procedural error complained of, whether or not excusable, did not exclude from the administrative record any facts which are pertinent to the Secretary's determination. Furthermore, plaintiffs were neither injured nor prejudiced by the non-compliance with the sixty day provision set forth in the statute. Under the circumstances, therefore, the court holds that the Secretary was not deprived of jurisdiction.

## The Secretary's Method and Final Determination

The next question is whether the method adopted by the Secretary was so defective that his conclusion, that increased imports did not contribute importantly to plaintiffs' separation from employment, was supported by substantial evidence, and was in accordance with law.

The Secretary concluded that "there were no increases of imports" that "contributed importantly" to plaintiffs' separation within the meaning of 19 U.S.C. § 2272(3). It is plaintiffs' principal contention that the method used by the Secretary in arriving at that conclusion is erroneous and not in accordance with law. Specifically, plaintiffs argue that, in determining whether there has been an "increase of imports," the Secretary is obligated to compare the year preceding the year of separation with the actual year of separation, in this case, the years 1979 and 1980. The administrative record discloses that a basic comparison of import statistics between those two years indicates a relevant increase in imports in the year 1980 over the year 1979. Plaintiffs also contend that the Secretary's reliance upon 1979 data is misplaced because of the exclusion from that data of the pending certification of U.S. Steel's Fairless Hills plant.

The Secretary responds that reliance upon the 1979 data was reasonable and in accordance with law because the case files "lacked 1980 data or contained incomplete data." The Secretary also contends that, even if complete 1980 data were available,

only data in certifications preceding August 1980, when plaintiffs' petition was filed, could have been used. Under these circumstances, the Secretary asserts that plaintiffs' contention, that the investigation was incomplete, is "speculative and irrelevant."

■ The Trade Act of 1974 empowers this Court to review a determination by the Secretary of Labor, which denies certification of eligibility for trade adjustment assistance benefits, to assure that it is supported by substantial evidence contained in the administrative record, and is in accordance with law. Section 284(b) of the Trade Act of 1974, 19 U.S.C. § 2395(b) (1982). The legislative history of the Act reveals that its purpose is to provide greater access, and more effective relief to industry, firms and workers that are seriously injured, or threatened with serious injury, by increased imports. Congress approved major modifications in the existing program of trade adjustment assistance for workers displaced by increased imports. These changes were designed to make the program more accessible to the workers. S.Rep. No. 93–1298, 93rd Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 7186–7205, 7275. To qualify for these benefits, a group of workers, their union or other authorized representative must file a petition with the Secretary for certification of eligibility to apply for adjustment assistance. In order to be certified as eligible to apply for adjustment assistance three statutory eligibility requirements must be met.

Section 222 of the Trade Act of 1974, 19 U.S.C. § 2272 (1982), requires that the Secretary shall certify a group of workers as eligible to apply for trade adjustment assistance if he determines:

(1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,

(2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and

(3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

*Id.*

In this case, the court must focus on the Secretary's negative determination of the third criterion which contains the key phrase "increases of imports."

There is no dispute that plaintiffs are service workers engaged in various activities related to the production of steel, and that their efforts are distributed evenly throughout U.S. Steel's production facilities. Nevertheless, the Secretary may certify plaintiffs for adjustment assistance benefits only if their separation from employment was "caused importantly" by a reduced demand for their services. In addition, the reduced demand must have originated at facilities whose employees independently meet the statutory criteria of section 222, and must have related directly to the production adversely impacted by increased imports. The Secretary, however, found that these conditions were not met by plaintiffs, and rested his decision on the fact that certified workers at the company represented only 8.5 percent of U.S. Steel's total shipments in 1979. Certifications of employees at U.S. Steel which expired in 1979 or early 1980, however, were not included in determining the number of certified workers at U.S. Steel. Indeed, a majority of the case files for the company for 1980 lacked data or contained incomplete data.

In the supplemental administrative record the Secretary has provided data that shows a decline in the average number of employees at the Monroeville laboratory from 1978, when they were first certified, through the first eight months of 1982. In further explaining his negative determination, the Secretary lists the names of the U.S. Steel mills, the petition number, and the date of issuance of his denial of certification for *production* workers during 1980 and 1981. The Secretary also lists those employees at the Monroeville laboratory who are currently eligible to apply for adjustment assistance benefits by the certification issued on May 24, 1982, and reiterates that they were previously certified for adjustment assistance benefits on November 18, 1977.

What is in question is the validity of the method utilized by the Secretary in finding that "increases of imports" did not contribute importantly to the separation of the employees at the Monroeville laboratory.

■ While the court may identify flaws in the method used by the Secretary, it is not the court's function to substitute its own method of analysis for that of the Secretary. Rather, the court will defer to the Secretary's chosen method, and remand for corrective action only "if that technique is so marred that the Secretary's finding is arbitrary, or of such a nature that it could not be based on 'substantial evidence.'" *United Glass & Ceramic Workers v. Marshall,* 584 F.2d 398, 405 (D.C.Cir.1978).

The method by which the Secretary attempts to answer the question whether "increases of imports" contributed importantly to the separation of *service* workers will, of course, vary with the nature of the work performed by them, and the structure of the industry. In this case, to determine the impact of imports upon the Monroeville laboratory workers, the Secretary's method was to take the total number of shipments made in 1979, i.e., production, and divide that figure by the number of certified production workers for the same period. This calculation resulted in a production/certification ratio, 8.5%, which could be compared with production/certification ratios of prior years when the Secretary granted certification of eligibility for adjustment assistance benefits.

In explaining the use of 1979 as the base year for his determination, the Secretary indicated that "1980 would have been a

better year for the present analysis, however, most of the case files lacked 1980 data or contained incomplete 1980 data."

What constitutes an appropriate base period for determining an increase in imports was first examined in *Paden v. United States Dep't of Labor*, 562 F.2d 470 (7th Cir.1977). In *Paden*, the Secretary compared import levels in the year of separation with the import levels of the immediately preceding year to determine the existence of increases in imports. Plaintiffs had contended that further comparisons should be made, such as a comparison of the year of separation with prior years, and a comparison between prior years. The Secretary submitted that confining consideration to imports during the year of separation and the immediate preceding year allowed him to focus on those imports which were most likely to affect employment in the year of separation. This, the Secretary maintained, diminished the effect of those factors which, while affecting employment, were not intended to be covered by the Act.

In affirming the Secretary, the Court of Appeals for the Seventh Circuit held that, in the absence of a valid reason to consider a different base period, the use of only the year of separation, as the base period for determining "increases of imports," was not erroneous.

The Secretary's method in limiting his assessment of worker injury to "increases of imports" and to a comparison of the year of separation with the prior year was recently reaffirmed by this Court in *International Union, United Auto. Aerospace and Agricultural Implement Workers v. Donovan*, 8 CIT ——, 592 F.Supp. 673 (July 10, 1984).

In this case, the administrative record discloses that in the prior and subsequent certifications at the Monroeville laboratory, the Secretary applied the method of comparing the year of separation with the prior year to determine whether "increases of imports" contributed importantly to their separation. In the earlier certification of April 1978, TA-W-2788, the Secretary determined that the workers at the Monroeville laboratory were eligible for trade adjustment assistance benefits. The Secretary based his determination on a comparison of data of previously certified *production* workers having "various impact dates from October 15, 1975 through June 26, 1977." In the subsequent certification of May 1982, TA-W-13,521, wherein the workers were separated on May 25, 1981, the Secretary also based his determination upon "a comparison of the data for the years 1981 to 1980, and 1982 to 1981."

In the instant determination, however, the Secretary, rather than compare the year of separation, 1980, with the immediately preceding year, 1979, chose to compare a production/certification ratio for 1979 with ratios for 1978 and 1977. It is clear, therefore, that the method chosen by the Secretary to determine that "increases of imports" had not "contributed importantly" to the separation of the Monroeville laboratory employees is not only inconsistent with prior case law, but with his own rulings. Moreover, the Secretary has not supplied a valid reason to explain why the court should consider a base period other than the one enunciated and utilized in prior cases. *Secretary of Agriculture v. United States*, 347 U.S. 645, 653, 74 S.Ct. 826, 831, 98 L.Ed. 1015 (1954); *Public Interest Research Group v. F.C.C.*, 522 F.2d 1060, 1065 (1st Cir.1975), *cert. denied*, 424 U.S. 965, 96 S.Ct. 1458, 47 L.Ed.2d 731 (1976).

Plaintiffs also point to the data in Table A in the supplemental administrative record as further support for their contention that "imports continued to significantly decrease steel production." A careful examination of Table A, however, reveals that a comparison of imports to shipments shows an increase of imports for the first three months in 1980 compared to the same period in 1979, and that the data in Table A relates to *nationwide* imports of *basic* steel products. Since the data as to imports of basic steel products cannot support a finding that meets the statutory criterion, this argument is not persuasive.

Furthermore, although a nationwide increase in imports would ordinarily be an absolute prerequisite to certification under the Act, plaintiffs, in this case, may be certified for eligibility only if the reduction in the demand for their services originated at a production facility whose workers independently met the statutory criterion. In addition, the reduction in demand for services must have related directly to the production adversely affected by increased imports.

In explaining the underlying factor for the *subsequent* certification of the Monroeville laboratory employees, and the denial of their present petition, the Secretary indicates that the "economic picture subsequently shifted." In support of that contention, he points to the table, in the supplementary record, of the "most recent certifications of U.S. Steel production facilities." The Secretary states that this table indicates that certified production represented 8.5% of U.S. Steel's shipments in 1979. The table also shows that *certified production represented* 35.4% in 1980, and 36.7% in 1981.

Implicit in the foregoing calculation for the year 1980, is that the Secretary had all of the required basic data necessary for its computation. It is not clear how the Secretary has now discovered the basic data required for his calculation for the year 1980. It is also not clear why the data for the relevant months in 1980 was not considered by the Secretary for his determination pursuant to the remand in *Katunich v. Donovan,* 5 CIT, Slip Op. 83–60 (June 17, 1983). Since the Secretary found that certified production represented *8.5%* of U.S. Steel's total shipments in *1979,* and *35.4%* in *1980,* it is evident that, if the data for the relevant months of *1980* were considered by the Secretary and compared with the data of the previous year, there may have been an affirmative determination of plaintiffs' petition.

### Conclusion

In light of the Secretary's admission that "1980 would have been a better year for the present analysis," it was incumbent upon the Secretary to make a greater effort to obtain the required information. The record does not reveal any efforts made by the Secretary to obtain the necessary information for a meaningful evaluation of plaintiffs' petition.

The court, therefore, finds that the method utilized by the Secretary in interpreting the existence of "increases of imports" evidences inconsistent application of data, and reliance upon incomplete data which renders it defective. Furthermore, the Secretary has not proffered a valid reason for the court to consider a base period other than the one enunciated in prior cases.

In view of the foregoing, it is the determination of this Court that the method utilized in this case which led to the Secretary's determination that "increases of imports" did not contribute importantly to plaintiffs' separation from employment, is not supported by substantial evidence, and is not in accordance with law.

Accordingly, it is hereby

ORDERED that the Secretary of Labor's determination is vacated and the action is remanded; and it is

FURTHER ORDERED that the Secretary of Labor prepare and issue a final determination, consistent with the foregoing opinion, within 60 days of this Order; and it is

FURTHER ORDERED that the Secretary of Labor, through counsel, provide the Court with a copy of his final determination within 5 days of its issuance.