Donna KELLEY, et al., Plaintiffs,

v.

SECRETARY, UNITED STATES DEPARTMENT OF LABOR, Defendant.

Court No. 85-03-00437.

United States Court of International Trade.

Dec. 30, 1985.

Donna Kelley, pro se.

Richard K. Willard, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Platte B. Moring, III, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## Opinion and Order

RESTANI, Judge:

Plaintiffs, former employees of the American Thread Company's (American Thread) plant in Tallapoosa, Georgia (Talla-

poosa plant), challenge the Secretary of Labor's determination denying eligibility of former employees of the Tallapoosa plant to apply for trade adjustment assistance under section 223 of the Trade Act of 1974 (Act), 19 U.S.C. § 2273 (1982).[1] Certification for eligibility to apply for adjustment assistance requires an affirmative determination by the Secretary of Labor under the three-part test of section 222.[2] The Secretary of Labor determined that the nexus between increased imports and worker separations required by the third element of Section 222 was lacking and thus the workers in question were denied eligibility to apply for adjustment assistance.

This court has authority to review a decision of the Secretary of Labor denying a petition for eligibility to apply for adjustment assistance. 19 U.S.C. § 2395(a) (1982). The court is bound by findings of fact by the Secretary of Labor supported by substantial evidence. 19 U.S.C. § 2395(b) (1982). The issue before the court is, therefore, whether there is substantial evidence on the administrative record to support the Secretary's determination that there was lacking the requisite causal nexus between increased imports of "like or directly competitive articles" and worker separations.[3]

■ Before addressing this issue, however, the court must consider defendant's jurisdictional challenge. Workers may challenge the Secretary of Labor's final determination on a petition for adjustment assistance by filing an action with this court within sixty days after notice is given. 19 U.S.C. § 2395(a) (1982). 29 CFR § 90.19(a) (1984) provides that the notice referred to in 19 U.S.C. § 2395(a) is notice via publication in the Federal Register. Notice of denial of eligibility to apply for adjustment assistance was published in the Federal Register on January 4, 1985, and plaintiffs' summons and complaint were not deemed filed until March 28, 1985. Defendant argues that plaintiffs thereby failed to comply with the sixty day statute of limitations and that this court, therefore, lacks jurisdiction over plaintiffs' substantive cause of action. Normally, in accordance with regulations and under case law, the sixty day period would run from the time constructive notice is given; the date of the Federal Register publication. Section 2395(a), however, is not so specific in its definition of notice. The court concludes, therefore, that the statute requires a consideration of whether notice was proper in the context of other applicable statutes and regulations. Section 223 of the Act provides that the Secretary of Labor must act on a petition for trade adjustment assistance within sixty days after such petition is filed.[4] 19 U.S.C. § 2273(a) (1982).

1. One determination was issued covering petitions filed by employees of American Thread's Tallapoosa and Willimantic plants. 50 Fed.Reg. 569. Investigations of those petitions were conducted separately, in large part, and only the Tallapoosa determination is currently before the court.

2. Section 222 provides:
    The Secretary shall certify a group of workers as eligible to aply for adjustment assistance under this part if he determines—
    (1) that a significant number or proportion of the workers in such workers' firm or an appropriate subdivision of the firm have become totally or partially separated, or are threatened to become totally or partially separated,
    (2) that sales or production, or both, of such firm or subdivision have decreased absolutely, and
    (3) that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.
    For purposes of paragraph (3), the term "contributed importantly" means a cause which is important, but not necessarily more important than any other cause.
19 U.S.C. § 2272 (1982, & 1983 Supp. I).

3. See subparagraph (3) of section 222 in footnote 2.

4. Regulations governing these proceedings break down this 60 day period further; a recommendation by the Office of Trade Adjustment Assistance (OTAA) on a petition is due within 45 days after such petition is filed and a final determination by the Secretary of Labor is due 15 days thereafter. 29 C.F.R. §§ 90.15–90.16 (1984).

The Secretary of Labor's final determination was published in the Federal Register approximately four months after plaintiffs' petition was filed, far exceeding the sixty day statutory provision. Although failure to comply with this deadline does not make the Secretary of Labor's determination *ultra vires, Katunich v. Donovan,* 8 CIT ——, 594 F.Supp. 744, 748–49 (1984), the court determines that certain consequences flow from a late determination. As previously recognized by this court,

> It is well settled that "the essence of due process is the requirement that a person in jeopardy of serious loss [be given] notice of the case against him *and opportunity to meet it." Mathews v. Eldridge,* 424 U.S. 319, 348 [96 S.Ct. 893, 909, 47 L.Ed.2d 18] (1976) (quoting Frankfurter, J., concurring in *Joint Anti-Facists Committee v. McGrath,* 341 U.S. 123, 171–72 [71 S.Ct. 624, 648–49, 95 L.Ed. 817] (1951)) (emphasis added). It is also true that "because of the *ex parte* nature of the certification process, and the remedial purpose of the trade adjustment assistance program, the Secretary is obliged to conduct his investigation with the utmost regard for the petitioning workers." *Local 167, International Molders and Allied Workers' Union v. Marshall,* 643 F.2d 26, 31 (1st Cir.1981).

*Estate of William Finkel v. Donovan,* 9 CIT ——, 614 F.Supp. 1245, 1248–49 (1985). Particularly where, as here, a party is proceeding *pro se* before the Secretary of Labor, the court finds that the Secretary's failure to comply with the statutory time constraints regarding issuance of a final determination makes it inappropriate to hold that publication in the Federal Register places plaintiffs on constructive notice and thereby marks the beginning of the sixty day statute of limitations. Congress could not have intended a *pro se* party to constantly search the Federal Register for the final determination of the Secretary of Labor for months beyond the sixty days within which such determination is due under the statute. Under the circumstances of this case, actual notice should have been provided and constructive notice will not mark the running of the statute of limitations. In a somewhat similar situation the court noted, "[t]he cost and administrative burden of conveying the additional information is minimal when compared with the benefits reaped by the parties and the court in devoting their efforts to the merits of the case rather than to procedural issues." *Tyler v. Donovan,* 3 CIT 62, 66, 535 F.Supp. 691, 694 (1982).[5] Plaintiffs did not receive actual notice of the negative determination until February 18, 1985. By filing a summons and complaint on March 28, 1985, plaintiffs were well within the sixty day statute of limitations.[6]

As indicated, the court must review the Secretary's decision to determine if it is supported by substantial evidence. Substantial evidence is characterized as "'more than a mere scintilla.'" *Dan Stipe v. U.S. Department of Labor,* 9 CIT ——, Slip Op. 85–112 at 3 (October 25, 1985) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Office of Trade Adjustment Assistance (OTAA), is charged with conducting investigations of petitions for

---

5. Defendant's procedures may have been further defective in that notice of a negative determination must be given promptly to the "group of workers concerned." 29 C.F.R. § 90.34 (1984). Defendant claims that it provided such notice to American Thread's personnel manager on January 2, 1985. Not only was this notice sent to an office in a different state from the one in which the plant was located, but it can hardly be said to have been sent to the "group of workers concerned."

6. In *Waschko v. Donovan,* 4 CIT 271 (1982), this court held that plaintiff, who filed its summons and complaint 61 days after the Secretary of Labor published his negative determination in the Federal Register, was time barred by the statute of limitations. *Waschko* is distinguishable from the case at bar, however, because the court in *Waschko* made an affirmative finding that the Secretary of Labor published the negative determination within the 60 day limit imposed by the statute. *Id.* at 272.

adjustment assistance. 29 C.F.R. § 90.12 (1984). Although OTAA has a duty to investigate, *Cherlin v. Donovan*, 7 CIT ——, 585 F.Supp. 644, 647 (1984), "[t]he court must show 'substantial deference' to the methods chosen by Labor to execute its statutory responsibilities, 'only remanding a case if [the method] is so marred that [Labor's] finding is arbitrary or of such a nature that it could not be based on 'substantial evidence.'' " *Dan Stipe*, Slip Op. 85–112 at 4 (quoting *United Glass & Ceramic Workers of North America v. Marshall*, 584 F.2d 398, 405 (D.C.Cir.1978)).

In completing its investigation, OTAA conducted customer surveys based on sales information provided by American Thread. The surveys compared sales data from 1983 with 1982 and data from the first eight months of 1984, the year of the plant closing, with the same period in 1983. It is clear that OTAA may use surveys to establish whether there is the requisite nexus between increased import penetration and worker separations. *Dan Stipe*, Slip Op. 85–112 at 4; *Cherlin*, 585 F.Supp. at 647 (both citing *United Glass*, 584 F.2d at 405 and *Local 167, International Molders and Allied Workers Union v. Marshall*, 643 F.2d 26, 29–31 (1st Cir.1981)).

■ OTAA surveyed five of the six companies that decreased their purchases of cotton and synthetic sewing thread from the Tallapoosa plant in 1983 as compared to 1982.[7] The one company not surveyed decreased its purchases by less than five percent of the total decline represented by the other five companies. Of these five companies, none reported purchases of imported cotton or synthetic thread during the 1982–83 period. In comparing the first eight months of 1984 with the same period in 1983, OTAA surveyed three of the six companies that decreased purchases from the Tallapoosa plant during that period. The

three companies *not* surveyed decreased their purchases from the Tallapoosa plant by more than twice as much during this period as those companies that were surveyed, with one of the companies not surveyed accounting for almost two-thirds of the total decline of the six companies. No explanation was offered on the record for the failure to survey these three companies.[8] The failure to consider data from the company that accounted for the largest decline in orders during the 1983–84 period or to explain the absence of this data from the record determines that the methodology was not in accordance with law and, as such, cannot support a conclusion that the Secretary of Labor's determination is supported by substantial evidence.

Defendant relies heavily on OTAA's data for the 1982–83 period in arguing that the Secretary of Labor's determination is supported by substantial evidence. Defendant makes no mention, however, of the 1983–84 survey data. As noted, the worker separations took place in 1984. It is presumed, therefore, that, absent explanation for an alternative approach, 1984 is the base period for the investigation and that data for the 1983–84 period should be considered. *See Katunich*, 594 F.Supp. at 752. Thus, although the survey of the 1982–83 period appears to have been conducted in accordance with law, survey data of those earlier years is insufficient in itself to satisfy the substantial evidence standard. *See id.* Additional data compiled by OTAA shows that although there was not a dramatic change in production or sales at the Tallapoosa plant between 1982 and 1984, there was a significant decline in employment at the Tallapoosa plant, both in numbers of employees and in employee hours, in 1983 as compared to 1982 and during the first eight months of 1984 as compared to the same period in 1983. Further, OTAA

---

7. Plaintiff's petition alleged that cotton and synthetic sewing thread was the article produced by the Tallapoosa plant, the sale or production of which was being hurt by increased imports.

8. An "X" on the Tallapoosa plant customer list marked next to the company that decreased

orders by the largest amount during the 1983–84 period may indicate that this company was surveyed. In any event, survey data from this company was omitted from the record without explanation.

states that imports of cotton and synthetic thread increased by 46.4 percent in 1983 over the 1982 level and by 75.5 percent during the first six months of 1984 compared with a similar period in 1983. Together, the lack of a complete survey and the lack of any identification of the cause of worker separations between 1982 and 1984 as something other than the large increase in imports, renders the decision unsupported by substantial evidence.[9]

■ Plaintiff challenges the scope of the investigation because OTAA and the Secretary of Labor failed to consider the impact of imports such as shoes and luggage on the sale of domestic cotton and synthetic thread or the impact of immigration on the United States labor force. The third element of section 222 requires that a substantial cause of the worker separations must be imported articles "like or directly competitive" with articles produced by the workers whose petition for adjustment assistance is being considered. 19 U.S.C. § 2272(3) (1982). Case law interpreting this provision establishes that to be "like or directly competitive" within the meaning of the statute, the imported articles must be " 'interchangeable with or substitutable for' the article under investigation." *Dan Stipe,* Slip Op. 85–112 at 5 (quoting *Holloway,* 585 F.Supp. at 1430, quoting *Machine Printers,* 595 F.2d at 862). Under this standard, plaintiffs' argument on the need to consider the impact of imported finished articles and of immigrant labor fails. *See also United Shoe Workers of America, AFL–CIO v. Bedell,* 506 F.2d 174, 186–87 (D.C.Cir.1974) (shoe counters and shoes are not "like or directly competitive" under predecessor to section 222); *International Union, United Auto, Aerospace and Agricultural Implement Workers of America v. Donovan,* 8 CIT ——, 592 F.Supp. 673, 679 (1984) (automotive wheels and automobiles are not "like or directly competitive"); *Gropper v. Donovan,* 6 CIT ——, 569

F.Supp. 883, 887 (1983) (finished fabric and knit fabric garments are not "like or directly competitive").

■ Finally, plaintiff contends that there was a lack of substantial evidence to support a determination on hand knitting yarn because no survey was conducted as to this article. As noted, however, plaintiffs' petition for adjustment assistance, listed only "cotton and synthetic sewing thread" as an article produced by the Tallapoosa plant, the sale or production of which was being hurt by increased imports. In addition, hand knitting yarn is not "like or directly competitive" with cotton and synthetic sewing thread. OTAA was thus justified in so limiting the scope of its investigation, thereby excluding hand knitting yarn from the survey of Tallapoosa plant customers.

The court concludes that this matter must be remanded to the Secretary of Labor for further development of the administrative record on the issue of whether increased imports of cotton and synthetic thread "contributed importantly" to worker separations at the Tallapoosa plant.

---

**9.** The record includes an explanation for the poor performance of U.S. industrial thread producers in 1982. There is no suggestion of a connection, nor is there substantial evidence on the record from which to infer such a link, however, between the problems of the industry in general in 1982 and the worker separations that occurred at the Tallapoosa plant in 1983 and 1984.