UNITED STEEL WORKERS OF AMERICA, LOCAL 1082, LEONARD NEWMAN, JOHN SHOTTEN, JOHN AGUDIO, HENRY JACKSON, JOSEPH MALACK, RAY STEINER, ARZIE HALL, AND FRANK ZADALAK, PLAINTIFFS *v.* ANN MCLAUGHLIN, SECRETARY OF LABOR, DEFENDANT

Court No. 88–06–00436

(Decided March 22, 1991)

*United Steel Workers of America, (Mary-Win O'Brien)*, Assistant Counsel, *Neighborhood Legal Services Association, (John Stember)*, for plaintiffs.

*Stuart M. Gerson*, Assistant Attorney General, *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Jane E. Meehan)*; United States Department of Labor *Gary Bernstecker*, for defendant.

DICARLO, *Judge*: Plaintiffs challenge Labor's denial of certification for trade adjustment assistance benefits under 19 U.S.C. § 2272 (1988). This Court has jurisdiction under 19 U.S.C. § 2395 (1988) and 28 U.S.C. § 1581(d)(1) (1988). Labor's determination is affirmed.

BACKGROUND

This action involves former employees of the Babcock & Wilcox ("B & W") Company's Beaver Falls Works, a plant producing seamless tubular steel products. The plaintiffs produced mechanical tube, pressure tube and oil country goods from January 1985 until September 13, 1986. According to Labor, between September 13, 1986 and January 28, 1987 there was a work stoppage at the plant, from which some workers did not return. Labor found that when production resumed in February 1987, plaintiffs produced only oil country goods until the end of the investigatory period in September 1987. In June 1987, the company announced it was closing the plant. Only a small number of workers were retained to wind up the business.

In a subsequent investigation, the record of which is part of the record before the Court, Labor certified workers separated from the plant between May 8, 1988 and June 1, 1989.

DISCUSSION

Trade adjustment assistance is available to workers separated from employment when Labor determines, *inter alia,*

> that increases of imports of articles like or directly competitive with articles produced by such workers' firm or an appropriate subdivision thereof contributed importantly to such total or partial separation, or threat thereof, and to such decline in sales or production.

19 U.S.C. § 2272(a)(3) (1988). Labor denied plaintiffs' petition because it did not satisfy this requirement.

Labor's findings must be upheld if they are supported by substantial evidence on the record and in accordance with law. 19 U.S.C. § 2395 (1988); *Woodrum v. Donovan*, 5 CIT 191, 193, 564 F. Supp. 826, 828

(1983), *aff'd sub nom. Woodrum v. United States*, 2 Fed. Cir. (T) 82, 737 F.2d 1575 (1984). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951)(quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Consolo v. Federal Maritime Comm'n*, 383 U.S. 607, 620 (1966)(citations omitted); *Matsushita Elec. Indus. Co. v. United States*, 3 Fed. Cir. (T) 44, 51, 750 F.2d 927, 933 (1984).

Plaintiffs claim Labor's determination is incorrect for three reasons: first, Labor erred in finding increased imports did not contribute importantly to plaintiffs' separations; next, Labor abused its discretion by limiting its investigation to the two years prior to plaintiffs' separations; and finally, Labor's determination lacks reasoned analysis since the certification of workers retained to wind up the business is contrary to this determination.

Plaintiffs' argument that Labor incorrectly concluded imports did not contribute importantly to their separations is based on the premise that Labor's finding that plaintiffs produced only oil country goods after the work stoppage is not supported by substantial evidence on the record.

Plaintiffs contend the record of the subsequent investigation of the winding up workers shows plaintiffs produced mechanical and pressure tube during 1987. The record of the subsequent investigation includes sales and production data for the company's fiscal year 1987; corresponding to April 1, 1987 through March 31, 1988. C.S.R. A25. While the investigatory periods overlap between April 1987 and September 1987, there is no indication that mechanical and pressure tube, assuming they were produced during fiscal 1987, were produced during the period of this investigation.

Plaintiffs also argue the record of a telephone conference with a B & W employee upon which Labor relied to support its finding that plaintiffs produced only oil country goods after the work stoppage is not substantial evidence. The information Labor relied upon came from a B & W industrial relations manager who was in a position to know what was being produced at the plant during the period of this investigation. *See* C.R. 90; *cf. Local 167, Int'l Molders & Allied Workers' Union, AFL–CIO v. Marshall*, 643 F.2d 26, 31–32 (1st Cir. 1981)(not an abuse of discretion to rely on unverified statement of company official). In addition, there is nothing in the record compiled for this investigation contrary to the information received from the manager. Finally, as stated above, the record compiled for the subsequent investigation does not contradict the manager's statement.

The Court has considered the record as a whole, including evidence that plaintiffs claim detracts from the evidence relied upon by Labor. *See Universal Camera Corp.*, 340 U.S. at 487–88; *Spurlock v. Depart-*

*ment of Justice*, 894 F.2d 1328, 1330 (Fed. Cir. 1990). Based on that consideration, the Court finds substantial evidence on the record to support Labor's finding that plaintiffs produced only oil country goods from September 13, 1986 until the end of the investigatory period.

Assuming plaintiffs did produce mechanical and pressure tube after the work stoppage, Labor's determination would still be supported by substantial evidence. The record shows customers who increased purchases of imported mechanical tube during the period of investigation attributed the increase to the work stoppage and the company's decision to close the plant. C.R. 148–71. Further, the record shows imports of pressure tube decreased during the period of investigation. R. 94. Under these facts, plaintiffs would be unable to show a causal nexus between increased imports and their separations. *See Former Employees of R.L.D. Dress Co. v. United States*, 14 CIT 384, Slip Op. 90–57 at 2 (June 14, 1990) (citing *Retail Clerks Int'l Union v. Donovan*, 10 CIT 308, 311 (1986)); *see also Estate of Finkel v. Donovan*, 9 CIT 374, 382, 614 F. Supp. 1245, 1251 (1985)(A causal nexus exists where there is a "direct and substantial relationship between increased imports and a decline in sales and production.").

Plaintiffs also claim Labor incorrectly narrowed its investigation to oil country goods by excluding workers who did not return after the work stoppage. As explained above, Labor examined imports of mechanical and pressure tube and found imports of those products decreased prior to the work stoppage. Those workers, therefore, if included within the scope of this action would not qualify for certification for benefits.

Plaintiffs next argue that by restricting the period under investigation to the two years prior to the date of the petition, Labor failed to consider the impact increased imports had on the industry in the early 1980's. Plaintiffs maintain increased imports in the early 1980's triggered a series a business decisions leading to the work stoppage and the plant closing.

The nature and extent of an investigation is within Labor's discretion. *Former Employees of CSX Oil & Gas Corp. v. United States*, 13 CIT 645, 720 F. Supp. 1002, 1008 (1989). In the absence of a valid reason requiring a different base period, the court has upheld Labor's practice of only considering the effects of imports during the year of separation and the preceding year. This practice diminishes "consideration of factors which, while affecting employment, are not within the coverage of the act." *Former Employees of R.L.D. Dress Co.*, 14 CIT 384, Slip Op. 90–57 at 3 (*quoting Paden v. United States Dep't of Labor*, 562 F.2d 470, 473 (7th Cir. 1977)). The facts plaintiffs rely on are similar to those discussed in *Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America v. Donovan*, 8 CIT 13, 592 F. Supp. 673 (1984). In that case the court held that although imports of competing products increased four consecutive years preceding the investigatory period, that fact did not constitute a valid reason to require Labor to deviate

from its practice. *Id.* at 18, 592 F. Supp. at 677. In this case, the Court finds Labor did not abuse its discretion in adhering to its practice.

Finally, plaintiffs argue Labor's negative determination lacks reasoned analysis because it is inconsistent with Labor's certification for trade adjustment assistance benefits of workers retained to wind up the business. For Labor's determination to stand, it must be based on a reasoned analysis. *Former Employees of Bass Enters. Prod. v. United States,* 12 CIT 470, 688 F. Supp. 625, 627 (1988).

The subsequent investigation is not before the Court. Labor's certification of workers remaining after plaintiffs were separated was a different investigation involving a different investigatory period and different products, purchasing patterns and import penetration. *See generally* C.S.R. A1–43 (record of subsequent investigation). The record in that investigation shows imports of competing products were increasing prior to the separation of the remaining workers. C.S.R. A20–21. Customer surveys from the subsequent investigation indicate the substitution of imports for domestic merchandise was an important cause of the plant's declining sales during that period of investigation. C.S.R. A35–39; S.R. 42. Therefore, Labor's determination in this investigation cannot be said to lack reasoned analysis because the result is contrary to the subsequent investigation.

CONCLUSION

The Court finds Labor's negative determination to be supported by substantial evidence on the record and in accordance with law. Accordingly, judgment is entered in favor of the defendant.